Sophia Ellen **WIK**, individually, Sophia Ellen Wik, as Administrator and Personal Representative of the Estate of Alec Wik, Sr., Appellant,

v.

Ralph Royden **WIK**, Jr., by his next friend, Gloria Jean Juliussen, Appellee.

No. 7765.

Supreme Court of Alaska.

April 20, 1984.

Kenneth J. Cusak, Cusak & Molloy, Soldotna, for appellant.

Raymond A. Gillespie, Robert M. Cowan, Cowan, Gillespie & Jefferson, Seward, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Chief Justice.

Sophia E. Wik appeals from a decision of the superior court granting Commercial Fisheries Entry Commission salmon set gill net limited entry permit No. S04H 60778S to Ralph Royden Wik, Jr. Mrs. Wik claims that the trial court misconstrued AS 16.43.150(h) when it treated the permit in question as personal property for purposes of inheritance, and that the trial court erroneously considered hearsay testi-

mony in determining the intent of the deceased permit holder, Alec Wik, Sr. We affirm. We hold that, except in the limited circumstances set forth in AS 16.43.150(h), limited entry permits are to be treated as ordinary personal property for inheritance purposes. We do not reach the hearsay issue, because any error which the trial court may have made in admitting the challenged testimony is harmless.

### I

The facts which dictate the outcome of this case are not in contention. On June 20, 1972, Alec Wik, Sr. executed a will, leaving all of his personal property and a parcel of real property to his son, Ralph Royden Wik, Sr. Ralph Wik, Sr. was sole devisee under the will. After executing this will, Alec Wik, Sr., a fisherman, acquired salmon set gill net limited entry permit No. S04H 60778S. Ralph Wik, Sr. later died, predeceasing his father, Alec Wik, Sr. Ralph, Sr. was survived by his wife, Eilene Wik, and a son, Ralph, Jr.

Alec Wik, Sr. died on September 21, 1980. At the time of his death he was married to, but living apart from, Sophia E. Wik. He was further survived by two sons, Erik Wik and Alec Wik, Jr., a daughter, Gloria Jean Juliussen, and a grandson, Ralph Wik, Jr. Alec, Sr.'s will of June 20, 1972 was subsequently admitted to probate, and, construed in accordance with AS 13.11.235 [1] and AS 13.11.240,[2] operated to pass all of Alec Wik Sr.'s personal property to Ralph Royden Wik, Jr.

The probate court, Judge Victor D. Carlson presiding, did not determine what effect the will had on the disposition of the limited entry permit. Instead, it noted the applicability of AS 16.43.150(h), which reads:

1. AS 13.11.235 provides:
   A will is construed to pass all property which the testator owns at his death including property acquired after the execution of the will.

2. AS 13.11.240 provides in relevant part:
   If a devisee who is a grandparent or a lineal descendant of a grandparent of the testator is

dead at the time of execution of the will, fails to survive the testator, or is treated as if he predeceased the testator, the issue of the deceased devisee who survive the testator by 120 hours take in place of the deceased devisee. . . .

Upon the death of an entry permit holder, the permanent permit shall be transferred by the [CFEC] directly to the surviving spouse by right of survivorship unless a contrary intent is manifested. When no spouse survives, the rights of the decedent pass as part of the decedent's estate.

The court determined that the Commercial Fisheries Entry Commission (CFEC) was the proper forum to decide whether Alec Wik, Sr.'s will manifested the "contrary intent" called for by the statute. It directed Sophia, the surviving spouse, and Ralph, Jr., the taker under the will, to take their dispute over the permit to the CFEC. The CFEC, however, refused to hear the case, stating that the matter was beyond its jurisdiction.

Thereafter, the present case was initiated in superior court before Judge Cranston. The court heard evidence and decided that Alec Wik Sr.'s will, in conjunction with statements made by him to family members, manifested "contrary intent" sufficient to remove the permit from the ambit of AS 16.43.150(h). The court then treated the permit as personal property, awarding it to the beneficiary under the will, Ralph Wik, Jr. We affirm the order of the superior court. However, we hold that the will *itself* provides sufficient evidence of Alec, Sr.'s "contrary intent" to remove the permit from AS 16.43.150(h)'s scheme.[3] The will also operates to pass the permit to Ralph Royden Wik, Jr.

**3.** *Rutherford v. State,* 605 P.2d 16, 21 n. 12 (Alaska 1979) (supreme court may affirm trial court's ruling on different grounds from those advanced by the trial court as the basis for that ruling).

**4.** *See* AS 16.43.180(b); 20 AAC 05.750 (Eff. 12/18/74); *see also* AS 16.43.150(f). Sophia Wik argues that even in the absence of section 150(h), limited entry permits are not subject to the Alaska probate provisions because they are technically more akin to licenses than to property. This argument misses the point. The question is not whether permits have all the inherent attributes of personal property, but rather whether the legislature intended permits to be *treated* as property for purposes of inheritance.

**II**

The question before us concerns the interpretation of AS 16.43.150(h), and the method in which a permit holder must manifest a "contrary intent" sufficient to insure that his permit will pass otherwise than to his spouse "by right of survivorship." A second question concerns what happens to those permits for which such an intent is sufficiently manifested. The statute is silent as to these matters.

■ We begin our analysis with an examination of the statutory scheme into which section 150(h) was inserted, for we assume that whenever the legislature enacts a provision, it has in mind previous statutes relating to the same subject matter. *Hafling v. Inlandboatmen's Union of the Pacific,* 585 P.2d 870, 877 (Alaska 1978).

AS 16.43.150(h) was enacted in 1977, four years after the initial enactment of the Limited Entry Act (AS 16.43.010–.990). Prior to the enactment of section 150(h), all limited entry permits were subject to the probate provisions of the Alaska Statutes (AS Title 13).[4] By enacting AS 16.43.-180(b), the legislature insured that permits would devolve according to the wishes of their holders. Such wishes were discoverable in accordance with the provisions of Title 13.[5]

It is clear that section 150(h) changed this scheme for some, if not for all, married

We read AS 16.43.180(b), "The commission shall adopt regulations providing for the temporary transfer of an entry permit upon the death of the permittee *pending final disposition of the permit as a part of the permittee's estate*" (emphasis added), to be a manifestation of such intent by the legislature.

**5.** One of the express purposes of Title 13 is to "discover and make effective the intent of a decedent in distribution of his property." AS 13.06.010(b)(2). This purpose is achieved through the provisions prescribing will formalities, as well as through will construction statutes, such as the after-acquired property statute, AS 13.11.235, and the anti-lapse statute, AS 13.-11.240.

permit holders.[6] At issue is whether section 150(h) makes Title 13 inapplicable to *all* permits held by married persons, or whether the intent discovery mechanisms of Title 13 must be applied before any permits held by married persons are distributed according to section 150(h)'s "by right of survivorship" provision.

Sophia Wik would construe section 150(h) to remove all married holders' permits from the ambit of Title 13. Her argument is based on two contentions: first, that the statutory requirement that a contrary intent be "manifested" indicates a legislative decision to make the Title 13 intent discovery mechanisms inapplicable to limited entry permits, and second, that AS 16.43.-150(h), being more specific than Title 13, must alone control the disposition of limited entry permits. We consider these contentions in order.

Sophia's argument that the word "manifested" demonstrates a legislative intent to impose a stricter burden on a party attempting to prove a deceased holder's intent than would be required under Title 13, might have some force had the legislature been writing upon a clean slate when it enacted section 150(h). But this was not the case. Section 150(h) was inserted into a preexisting statutory scheme. The section's effect, while explicitly amending AS 16.43.150, was to impliedly amend other sections of the Limited Entry Act as well (e.g., AS 16.43.180).

The presumption in cases of implied amendment, as stated by Professor Sutherland,

> is against any change in legal rights.... [T]here is a presumption against the implied repeal or amendment of any existing statutory provision. In accord with this conservative attitude, an amendatory act is not to be construed to change the original act or section further than expressly declared or necessarily implied.

1A C. Sands, Sutherland Statutory Construction § 22.30, at 179 (4th ed. 1972) (footnotes omitted).

Section 150(h), with its use of the word "manifested," can hardly be said to *necessarily* change the scheme by which permit holder intent is discovered through application of Title 13.[7] In fact, just the opposite implication arises. The will formality and will construction provisions of the Alaska Probate Code (Title 13) are the means picked by our legislature both to discover the intent of property owners regarding disposition of their property after death, and to inform property owners of the steps they must take to insure that their intentions are carried out. These provisions, now codified, are the product of an evolutionary development stretching centuries back into the common law of England. They represent the best efforts of our society to arrive at the most reliable and predictable means of intent discovery available. If the legislature wished to remove a species of property from their ambit it would do so explicitly, and it would at least attempt to establish an alternate means of intent discovery to be applied. Here it did neither.

Should section 150(h) be construed to remove limited entry permits from the protections of Title 13, the immediate parade of questions left unanswered is staggering.[8] The questions which arise are precisely those which Title 13 was enacted to resolve. We conclude that section 150(h)

---

**6.** It is equally clear that the scheme remains undisturbed for unmarried permit holders. The rights of an unmarried permit holder which pass "as part of the decedent's estate", according to section 150(h), include the "right" to hold the permit. It follows that the permit itself passes as a part of the holder's estate. Regulations promulgated by the CFEC reflect this view. *See* 20 AAC 05.750 (Eff. 12/18/74, am. 7/20/83).

**7.** It is clear, however, that in the case of married permit holders, section 150(h) does sup-

plant the Title 13 provisions regarding intestate succession. Those provisions, by their very nature, apply only where no legally cognizable expression of intent has been made.

**8.** How may a permit holder manifest intent? Is a specific reference in a will sufficient? A letter to the CFEC? A notation on the permit card? A proclamation to members of the holder's family? What if all of these manifestations are made, but each conflicts with every other?

does not evince any intent on the part of the legislature to have these questions answered by recourse to anything other than Title 13.

■ Sophia's second contention, that AS 16.43.150(h) must control over Title 13 because it is more specific, is without merit. The rule, as stated in *State, Department of Highways v. Green*, 586 P.2d 595, 602 (Alaska 1978) is that a statute dealing with specific subject matter in a detailed way prevails over a more general statute *only* if the two statutes cannot be harmonized. Here the statutes do not conflict, so we need not resort to the rule of construction favoring specific over general provisions.

The legislative history which exists for section 150(h) supports our conclusion. No indication exists that, by enacting section 150(h), the legislature purported to prefer spousal inheritance of permits over inheritance by persons other than spouses (a legislative purpose which, if shown, might justify imposing stricter rules regarding manifestation of intent on married permit holders than those which Title 13 imposes). Instead, the sole concern of the legislature seems to have been to spare those spouses who would receive permits under Title 13 anyway from the inconvenience and delay of the probate process.[9]

■ Given (1) that one purpose of Title 13 is to discover the previously expressed intent of deceased persons regarding their property, (2) that the legislature had previously provided for the applicability of Title 13 to limited entry permits, (3) that a means of discovery of deceased permit holders' intentions is as necessary after the enactment of section 150(h) as it was before its enactment, (4) that no alternate means of discovery of such intent is hinted

at by the statute, and (5) that the legislative history concerning the purpose of section 150(h) is not in conflict, we conclude that a deceased permit holder's "contrary intent" is to be discovered through the application of the Title 13 will provisions, including will construction statutes.

### III

■ Applying this construction of the statute to the facts of the present case, the result is clear. Sophia Wik does not dispute the trial court's finding that Alec Wik, Sr.'s will operated to pass all of his personal property to Ralph Royden Wik, Jr. The operative will provision was general in form, bequeathing "all of my personal property" to Ralph Royden Wik, Sr.; Ralph Royden Wik, Jr. took pursuant to the antilapse statute.[10] A bequest of "all personal property" supplies the contrary intent necessary to exempt a limited entry permit from the spousal "by right of survivorship" inheritance scheme of AS 16.43.150(h). This is so even if the permit was not acquired by the testator until after execution of the will.[11] Such a permit passes as personal property, according to the intentions its holder expressed in his will. Thus, Alec Wik, Sr.'s will operated to pass his limited entry permit to Ralph Royden Wik, Jr.

### IV

In trying this case, the superior court admitted into evidence testimony by witnesses concerning statements allegedly made by Alec Wik, Sr. The substance of these statements, which were made at various times after the death of Ralph Wik, Sr., was that Alec, Sr. intended to have Ralph, Jr. take Alec, Sr.'s permit upon his

---

**9.** Representative Eliason, who authored the committee substitute which became section 150(h), stated in explaining the section:

> If you had a permit and you cashed in, your wife wouldn't be able to transfer that permit until it was probated by a court of law.... It creates a hardship upon those surviving spouses, sometimes the waiting list period for probate court and ... attorney's fees.... In effect what we're doing is saying that the

> widow or surviving spouse can sell the permit immediately, without going through the probate process.

Proceedings of the House Resources Committee regarding C.S.S.B. 83, tape 12 (Feb. 25, 1977).

**10.** AS 13.11.240.

**11.** AS 13.11.235.

death. This testimony was challenged by Sophia Wik on hearsay grounds.

In light of our conclusion stated above, this testimony might well be challenged on relevancy, as well as on hearsay grounds. However, we need not decide these issues. Any error the superior court may have made in considering the testimony is harmless. The permit devolves upon Ralph Royden Wik, Jr. by the terms of Alec Wik Sr.'s will.

The judgment of the superior court is AFFIRMED.