Stephen VANEK, Teague Vanek, David Martin, and Steve Tvenstrup, in a representative capacity on behalf of a class and for all others similarly situated; Tim Keener, Kenneth Coleman, Douglas Blossom, and Mark Ducker, in a representative capacity on behalf of a class and for all others similarly situated, Appellants,

v.

STATE of Alaska, BOARD OF FISHERIES, Appellee.

No. S–12579.

Supreme Court of Alaska.

Sept. 19, 2008.

Arthur S. Robinson, Robinson & Associates, Soldotna, for Appellants.

Steven A. Daugherty, Assistant Attorney General, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Commercial salmon fishers holding Cook Inlet entry permits and shore fishery leases brought this class action requesting a declaratory judgment that regulations promulgated by the Alaska Board of Fisheries since 1996 have caused a taking or damaging of their property interests without just compensation. The superior court granted the state's motion to dismiss the case. The salmon fishers appeal the superior court's decision, arguing that their entry permits and shore fishery leases are constitutionally protected property and that the regulations at issue effect a taking or damaging of their property rights requiring just compensation. Because the entry permits are not property interests for purposes of takings analysis under the Federal or Alaska Constitutions, and because even if the permits or leases are property, the property interests have not been taken or damaged through the regulations, we affirm the superior court's decision to dismiss the case.

## II. FACTS AND PROCEEDINGS

The plaintiffs in this case are commercial salmon fishers who have held Alaska Commercial Fishing Entry Commission (CFEC) Cook Inlet drift gillnet permits or set gillnet permits. They all harvest pacific salmon in Cook Inlet for sale into the international seafood market. The defendant, State of Alaska Board of Fisheries is the state agency authorized to promulgate commercial fishing regulations for Cook Inlet under AS 16.05.251(a).

This case arises out of changes to the Upper Cook Inlet Salmon Management Plan. That plan, put into place by the board through 5 Alaska Administrative Code 21.363

in 1978, allocated Upper Cook Inlet salmon among Upper Cook Inlet commercial gillnet fishers and recreational in-river anglers in the Kenai, Kasilof, and Susitna rivers. Under the plan, salmon stocks were managed primarily for commercial users from July 1 to August 15 each year. After August 15, salmon stocks moving to the Kenai Peninsula drainage were managed for recreational uses, but salmon stocks other than those spawning on the Kenai Peninsula were still managed for commercial uses. As a result of the plan, the set net salmon season in the Kasilof, Kenai, and East Foreland sections of the Central District of Cook Inlet ran from June 25 to August 15 each year. From 1982 to 1996, the season for Upper Cook Inlet commercial drift gillnet salmon fishing ran from June 25 to December 31 each year.

In 1996 the board promulgated 5 AAC 21.358, the Northern District Salmon Management Plan, which closed the drift gillnet fishing season on August 9 in order to allocate silver salmon to in-river recreational fisheries in the Matanuska–Susitna drainage areas. The regulation also restricted commercial drift gillnet permit holders from operating gear in certain areas of Cook Inlet during what otherwise would be priority commercial fishing times.

In 1997 the board adopted 5 AAC 21.357, the Kenai River Coho Salmon Conservation Management Plan, which directed the Upper Subdistrict of Upper Cook Inlet to close following the first regularly scheduled set gillnet fishing period on or after August 10. That year, the period was closed before August 15 for the first time since 1978. The board also adopted 5 AAC 21.310, which changed the opening date for the set gillnet season in the Kenai and East Forelands sections of the Central District from June 25 to July 8 and changed the closing date for the set gillnet season from August 15 to August 10.

In 1999, 2000, and 2002, the board adopted numerous other regulations revising the Up-per Cook Inlet Salmon Management Plan. These regulations limited the harvest of salmon and shortened the seasons for commercial drift gillnet fishing and set gillnet fishing.

These various regulations had the cumulative impact of reducing the amount of fish the drift gillnet and set gillnet fishers were able to catch and thus reducing the value of the commercial fishers' entry permits and the set gillnet fishers' shore fishery leases.

The salmon fishers filed a complaint on October 25, 2005, alleging that the regulations "constitute unlawful takings or damage to [their] property interest in violation of the United States and Alaska Constitutions." They sought "a declaration that these government actions are unconstitutional and unenforceable without just compensation paid to the plaintiffs for a taking or damage to their property."

On December 12, 2005, the state filed a motion to dismiss pursuant to Alaska Rule of Civil Procedure 12(b)(6), arguing that the salmon fishers' complaint fails to state a claim for which relief can be granted. On December 1, 2006, Superior Court Judge Sen K. Tan entered an order granting the motion to dismiss. Judge Tan entered final judgment dismissing the salmon fishers' claims on December 29, 2006.

The salmon fishers appeal.

## III. STANDARD OF REVIEW

 We review *de novo* an order dismissing a complaint on the basis of Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[1] Generally, motions to dismiss for failure to state a claim are disfavored and should be rarely granted.[2] To survive a motion to dismiss, the complaint must allege a set of facts consistent with and appropriate to some cause of action.[3] For purposes of reviewing an order on a motion to dismiss, we deem all facts in the complaint true and provable.[4] The complaint can be dismissed under Rule 12(b)(6) only where it

1. *Kollodge v. State*, 757 P.2d 1024, 1026 n. 4 (Alaska 1988).

2. *Id.* at 1026.

3. *Catholic Bishop of N. Alaska v. Does 1–6*, 141 P.3d 719, 722 (Alaska 2006).

4. *Id.*

appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief.[5]

## IV. DISCUSSION

### A. The Request for a Declaratory Judgment Is Moot, but the Public Interest Exception to the Mootness Doctrine Applies.

The state argues that the salmon fishers' claims do not present a "current live controversy" and are therefore moot because the challenged regulations were extensively amended in 2005. The salmon fishers respond that the controversy is not moot because "even the newer regulations so substantially restrict the appellants' activities under their permits and leases, in the same manner as the former regulations, that the unconstitutional taking and damaging of property is ongoing." The salmon fishers also argue that even if the claims are moot, we should decide the issues under the public interest exception to the mootness doctrine.

■■■■ We apply our independent judgment in determining mootness because mootness is a question of law.[6] We refrain from deciding a question where the facts have rendered the legal issues moot.[7] A claim is moot if it has lost its character as a present, live controversy,[8] or if the plaintiffs would not be entitled to relief even if they were to prevail.[9] However, even when a case is moot we may decide certain issues if they fall within the public interest exception to the mootness doctrine.[10] "The exception consists of three factors: (1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may cause review of the issues to be repeatedly circumvented, and (3) whether the issues presented

are so important to the public interest as to justify overriding the mootness doctrine."[11]

We have addressed mootness claims in previous challenges to board regulations. In *Peninsula Marketing Ass'n v. State*,[12] we held that even though a challenged regulation placing a cap on the number of chum salmon to be taken in a fishery had been amended to raise the cap, rendering questions regarding the validity of the regulation moot, we would still consider whether the statute delegating fishery management authority to the board applied to intra-commercial fishery resource allocations.[13] We reasoned that the public interest exception applied because the board could easily evade review of one of its regulations by amending it annually, and the question presented was of considerable public importance.[14] Also, in *Grunert v. State*[15] we held that the validity of a challenged board regulation was moot because the regulation was amended but chose to consider the issue under the public interest exception to the mootness doctrine because there would likely be a continued dispute concerning the interpretation of the amended regulation.[16]

■■■■ Here, as in *Grunert*, the challenged board regulations have been amended, which likely makes the declaratory judgment action concerning the prior regulations moot. However, as in *Grunert* and *Peninsula Marketing*, an analysis of the public interest factors reveals that it is appropriate in this case to apply the exception to the mootness doctrine and address the underlying takings issue. First, this case is capable of repetition in the form of a new suit challenging the new regulations because the salmon fishers allege that the amended regulations restrict their fishing in the same way as the prior regulations. Second, application of the

5. *Id.*

6. *Akpik v. State, Office of Mgmt. & Budget,* 115 P.3d 532, 534 (Alaska 2005).

7. *Id.* at 535.

8. *Id.*

9. *O'Callaghan v. State,* 920 P.2d 1387, 1388 (Alaska 1996).

10. *Akpik,* 115 P.3d at 535.

11. *Id.* (internal citations omitted).

12. 817 P.2d 917 (Alaska 1991).

13. *Id.* at 920.

14. *Id.*

15. 109 P.3d 924 (Alaska 2005).

16. *Id.* at 931.

mootness doctrine may cause review of the issues to be repeatedly circumvented because the board could easily evade review of the regulations by amending them annually. Finally, "the issues presented are so important to the public interest as to justify overriding the mootness doctrine"[17] because they involve constitutional takings claims affecting one of this state's most important industries: commercial fishing. Thus, although the 2005 amendments to the board regulations at issue may have mooted the salmon fishers' claims, we address the claims under the public interest exception to the mootness doctrine.[18]

### B. The Superior Court Correctly Concluded that the Board of Fisheries Regulations Did Not Effect a Taking of CFEC Entry Permits Requiring Just Compensation.

In its order granting the state's motion to dismiss the fishers' complaint, the superior court held that "the Plaintiffs do not have a cognizable property interest in their entry permits sufficient to support a takings claim." The fishers argue that the CFEC permits are constitutionally protected property under the takings clauses of the United States and Alaska Constitutions requiring compensation when involuntarily divested. The state responds that there are no cognizable property interests in CFEC permits that could be taken or damaged by regulations of the board.

Under the Fifth Amendment of the Federal Constitution private property shall not "be taken for public use, without just compensation." The Alaska Constitution contains a broader conception of compensable takings. According to article I, section 18, "[p]rivate property shall not be taken or damaged for public use without just compensation." Article VIII, section 16 states, "[n]o person shall be involuntarily divested of his right to the use of waters, his interests in lands, or improvements affecting either, except for a superior beneficial use or public purpose and then only with just compensation and by operation of law."

### 1. The superior court correctly concluded that the CFEC permits are not compensable property under the takings clauses of the Federal and Alaska Constitutions.

The fishers argue that their entry permits are property for purposes of takings analysis. They contend that the board has no regulatory power to suspend, modify, or revoke the permits; that the permits confer exclusive fishing rights; that the permits are "valuable and transferable"; that the permits can be used as collateral for loans; and that even applicants for the permits have protected property interests that entitle them to due process protections. The state responds that the "CFEC permits provide permit holders nothing more than a use privilege or license to fish, subject to all applicable regulations adopted by the board of Fisheries."

### a. The Limited Entry Act says that entry permits are not property for purposes of the takings clauses.

Alaska Statute 16.43.150(e) provides that "[a]n entry permit constitutes a use privilege

---

**17.** *Akpik v. State, Office of Mgmt. & Budget*, 115 P.3d 532, 534 (Alaska 2005).

**18.** The state also argues that the salmon fishers' claims are barred by the AS 09.10.070 two year statute of limitations for the taking or injuring of personal property. The shore fishery leases in this case grant an interest in real property— submerged land. We have held that the ten year statute of limitations for ejectment actions, AS 09.10.030, applies in cases of inverse condemnation involving real property. *See City of Kenai v. Burnett*, 860 P.2d 1233, 1240 n. 13 (Alaska 1993). The regulations at issue first went into effect in 1996, and the complaint in this case was filed less than ten years later, on October 25, 2005, so the claim based on damage to the value of the

shore fishery leases is not barred. The claim based on damage to the value of the entry permits does not fall under the two year statute of limitations because AS 09.10.070 applies only to situations in which a private party takes or injures the personal property of another private party, and this case involves not private action but state action. Further, "[w]e look upon the defense of statute of limitations with disfavor and will strain neither the law nor the facts in its aid." *Fred Meyer of Alaska, Inc. v. Adams*, 963 P.2d 1025, 1027 n. 6 (Alaska 1998). Because the state fails to present a convincing argument that any applicable statute of limitations bars the salmon fishers' entry permit takings claim, we address the merits of the claim.

that may be modified or revoked by the legislature without compensation." An August 6, 1979 Attorney General Opinion explained that "a limited entry [fishing] permit has not acquired the status of a property right such that otherwise constitutional legislative changes to the nature of a limited entry permit would require the payment of compensation."[19] After first enacting the Limited Entry Act in 1973,[20] the Alaska Senate re-examined the statute in 1990 and rejected the idea that an entry permit represents a property right belonging to the permit holder.[21] Nevertheless, we have not yet definitively stated whether the permits are property for purposes of takings analysis.

■ The plain language of the Limited Entry Act supports the superior court's conclusion that an entry permit is not property but a mere "use privilege" that does not require compensation when modified. The legislature's "use privilege" language establishes that the permits are merely licenses to fish that are subject to government regulation. The salmon fishers' argument focuses heavily on the second clause of AS 16.43.150(e): "may be modified or revoked by the legislature without compensation." They argue that this language indicates that the legislature, but not the board, can modify or revoke the permits without paying just compensation. Under the salmon fishers' argument, board regulations affecting the value of the permits require just compensation. The salmon fishers' argument is unconvincing for three reasons: (1) the first clause of AS 16.43.150(e) makes clear that an entry permit is a "use privilege," not a property right; (2) the fact that the provision explicitly provides for modification or revocation by the legisla-

ture does not mean that the board cannot also promulgate regulations modifying the allowable use of entry permits; and (3) the legislature has explicitly delegated the power to regulate fishery resources to the board, so board regulations which affect the value of entry permits, like direct actions by the legislature, do not require just compensation.[22]

### b. A conclusion that the limited entry permits are property for purposes of takings analysis would violate other provisions of the state constitution.

We addressed the constitutionality of the limited entry system in *State v. Ostrosky*.[23] We held in *Ostrosky* that the entry restrictions and transferability provisions in the Limited Entry Act comport with article VIII, section 3 (common use of natural resources), article VIII, section 15 (no exclusive right of fishery), and other provisions in the state constitution.[24] The entry restrictions prohibit operation of commercial fishing gear without a permit, and the transferability provisions allow limited transferring of a permit if the transferee can show present ability to participate actively in the fishery.[25] The transferability provisions also provide for a right of survivorship to the surviving spouse unless the possessor of the permit manifests a contrary intent.[26]

Article VIII, section 3 of the Alaska Constitution provides that "[w]herever occurring in their natural state, fish, wildlife, and waters are reserved to the people for common use." And the first sentence of article VIII, section 15 bans exclusive rights in fisheries:

19. 1979 Formal Op. Att'y Gen. 19.

20. Ch. 79, § 1, SLA 1973.

21. *See* Jon David Weiss, *A Taxing Issue: Are Limited Entry Fishing Permits Property?*, 9 Alaska L.Rev. 93, 96, 112 (1992) (noting that state senate rejected idea that entry permits confer property rights but concluding that permits are "property" or "rights to property" for federal tax purposes).

22. *See* AS 16.05.251(a)(2) (stating that board "may adopt regulations it considers advisable"

for "establishing open and closed seasons and areas for the taking of fish"); AS 16.05.251(e) (stating that board "may allocate fishery resources among personal use, sport, guided sport, and commercial fisheries").

23. 667 P.2d 1184 (Alaska 1983).

24. *Id.* at 1185–86.

25. AS 16.43.170(b).

26. AS 16.43.150(h).

No exclusive right or special privilege of fishery shall be created or authorized in the natural waters of the State.

The second sentence of article VIII, section 15, was added by amendment in 1972 in order to authorize a limited entry system.[27] It provides:

This section does not restrict the power of the State to limit entry into any fishery for purposes of resource conservation, to prevent economic distress among fishermen and those dependent on them for a livelihood and to promote the efficient development of aquaculture in the State.

In *Ostrosky*, we upheld the statutory limited entry system and transferability provisions, concluding that they were permissible under the newly added language of article VIII, section 15. But we recognized that a tension existed between the new language authorizing limited entry and the pre-existing language of the common use and no exclusive right of fishery clauses. We accepted as "logical" the fisher's argument in *Ostrosky* that "whatever system of limited entry is imposed must be one which, consistent with a feasible limited entry system, entails the least possible impingement on the common use reservation and on the no exclusive right of fishery clause." [28]

But granting property status to entry permits for the purpose of a constitutional takings analysis would go beyond our approval in *Ostrosky* of the statutory limited entry system. If the CFEC permits were given the status of property for purposes of a takings challenge based on changes in regulations, then the waters would not truly be "reserved to the people for common use," as required by article VIII, section 3. Rather, a permit holder would effectively own the right to fish to the exclusion of other people in a manner that was not contemplated by the limited entry amendment and which is not required by the purposes of limited entry. Similarly, giving a CFEC permit property status for purposes of a regulatory takings challenge would grant an "exclusive right" of fishery for the permit holder in violation of the first sentence of article VIII, section 15. Again, such a status would go beyond that contemplated by the second sentence of section 15 and is not required to accomplish the purposes of limited entry. Providing for a system of entry permits—which allows the board discretion to promulgate and amend regulations for "resource conservation," "prevent[ion] [of] economic distress," and the "efficient development of aquaculture"—on the other hand, clearly falls within the contemplation of both sentences in article VIII, section 15.

■■■ Because it would imply an exclusive right of access to the fishery, which is not needed for the purposes of a limited entry system, a conclusion that the permits are property under takings analysis would violate the common use and no exclusive right of fishery provisions of the state constitution. We construe statutes "if reasonably possible so as to avoid a conclusion that they are unconstitutional." [29] Thus, in order to ensure that the Limited Entry Act does not violate article VIII, sections 3 and 15 of the state constitution, we conclude that the entry permits are not property for purposes of a takings challenge.

The salmon fishers also argue that they should receive just compensation because they have a "private property interest in state waters" that has been involuntarily divested in violation of article VIII, section 16

---

**27.** *Ostrosky*, 667 P.2d at 1189.

**28.** *Id.* at 1191. *See also Johns v. Commercial Fisheries Entry Comm'n*, 758 P.2d 1256, 1266 (Alaska 1988), where we observed that in *Ostrosky*

we noted that there is a tension between the limited entry clause of the state constitution and the clauses of the constitution which guarantee open fisheries. We suggested that to be constitutional, a limited entry system should impinge as little as possible on the open fishery clauses consistent with the constitutional purposes of limited entry, namely prevention of economic distress to fishermen and resource conservation.

In *Johns* we accepted the least impingement possible approach as a basis for requiring the Commercial Fisheries Entry Commission to proceed forthwith to determine the optimum number of permits for the fishery there in question. *Johns*, 758 P.2d at 1266.

**29.** *Sonneman v. Hickel*, 836 P.2d 936, 940 (Alaska 1992).

of the state constitution.[30] This argument suffers from the same problem as their general takings argument: While the salmon fishers have water rights, they do not have the right to an exclusive fishery because recognition of such a right would violate article VIII, sections 3 and 15. Thus, article VIII, section 16 does not grant the salmon fishers an exclusive private property right in the state's waters.

### c. Case law addressing the nature of CFEC permits and other similar fishing licenses does not support the conclusion that the permits are property for purposes of a takings challenge.

We have addressed the nature of CFEC permits in the context of inheritance, child support, and entitlement to due process protection. In *Wik v. Wik,* we held that entry permits are "ordinary personal property" for inheritance purposes.[31] However, we were careful not to make a broader proclamation about the nature of the entry permits. We stated, "[t]he question is not whether permits have all the inherent attributes of personal property, but rather whether the legislature intended permits to be *treated* as property for purposes of inheritance." [32] In *Anderson v. Anderson,* we held that the permits are subject to execution for past due child support claims.[33] In *Miner's Estate v. Commercial Fisheries Entry Commission,* we held that a qualified applicant for an entry permit has a "property interest entitled to due pro-

cess protection" because of "the statute's linking entitlement to past license-holding, because the standards by which applications are judged are specific and non-discretionary, and because the statute regulates individuals' pursuits of their livelihoods." [34] However, in *Miner's Estate* we also approvingly quoted a passage from *Commercial Fisheries Entry Commission v. Apokedak,* which states that a gear license holder has a "privilege" and a "license." [35] We have never held that CFEC permits grant a property interest for purposes of a takings challenge.

Various federal cases have addressed takings claims involving regulation of the fishing industry.[36] *Conti v. United States* involved the federal government's prohibition of sword fishing using drift gillnet gear in the Atlantic Swordfish Fishery under a statutory scheme that explicitly provided for fishery regulation by the Secretary of Commerce.[37] Conti, a possessor of a swordfishing permit, brought a lawsuit alleging that the regulation effected a taking of his permit requiring just compensation.[38] The Federal Circuit Court of Appeals held that Conti's swordfishing permit fell short of conferring a cognizable property interest.[39] The court explained, "[t]he Constitution neither creates nor defines the scope of property interests compensable under the Fifth Amendment." [40] Rather, " 'existing rules and understandings' and 'background principles' derived from an independent source, such as state, federal, or common law, define the dimensions of the requisite property rights." [41] The court reasoned that "courts

**30.** Article VIII, section 16 provides: "No person shall be involuntarily divested of his right to the use of waters, his interests in lands, or improvements affecting either, except for a superior beneficial use or public purpose and then only with just compensation and by operation of law."

**31.** 681 P.2d 336, 337 (Alaska 1984).

**32.** *Id.* at 338 n. 4 (emphasis in original).

**33.** 736 P.2d 320, 324 (Alaska 1987).

**34.** 635 P.2d 827, 832 (Alaska 1981).

**35.** *Id.* at 830–31 (quoting 606 P.2d 1255, 1266–67 (Alaska 1980)).

**36.** The federal cases involve the Federal Constitution's takings clause, which is less protective than the takings clause found in the Alaska Con-

stitution. *See Ehrlander v. State, Dep't of Transp. & Pub. Facilities,* 797 P.2d 629, 633 (Alaska 1990) ("The inclusion of the term 'damage' [in the Alaska Constitution's takings clause] affords the property owner broader protection than that conferred by the Fifth Amendment to the Federal Constitution.").

**37.** 291 F.3d 1334, 1336–37 (Fed.Cir.2002).

**38.** *Id.* at 1337.

**39.** *Id.* at 1341.

**40.** *Id.* at 1340.

**41.** *Id.* (quoting *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1030, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)).

have held that no property rights are created in permits and licenses."[42] The court also emphasized the fact that Conti did not have the right to assign, sell, or otherwise transfer the permit and stated that such rights "are traditional hallmarks of property."[43] Finally, the court recognized that the permits did not confer exclusive fishing privileges and that the government retained the right to suspend, revoke, or modify the permit.[44] Another similar federal case, which was relied on by the superior court in its decision below, is *American Pelagic Fishing Co. v. United States.*[45] In *American Pelagic*, the Federal Circuit held that a commercial fishing vessel owner and permit holder did not suffer the taking of a property interest legally cognizable under the Fifth Amendment when previously issued permits were revoked through special legislation and regulations.[46] The court refused to find a compensable property interest because the permits were not transferable or assignable, they did not confer exclusive fishing privileges, and they could be revoked, suspended, or modified by the government.[47] In *American Pelagic*, the court emphasized that property rights only exist against the framework of existing laws and regulations, and that there was no property right in this case because the right to fish implicates the government's power over conservation and management of fishery resources.[48]

Although we have treated limited entry permits as property for other purposes such as inheritance and child support, the federal cases are persuasive in their reasoning that fishing permits do not confer property interests for the purposes of takings claims. An examination of background principles of state law reveals that the permits are not property

but rather use privileges[49] or licenses subject to the police power of the state. Further, limited entry permits came into existence only as part of a framework of laws that allowed for regulation of the Alaska fishery and authorized continuing amendment and adjustment of the permit system.[50] Alaska Statute 16.43.950 explicitly makes entry permits subject to board regulation:

> Nothing in this chapter limits the powers of the Board of Fisheries, including the power to determine legal types of gear and the power to establish size limitations or other uniform restrictions applying to a certain type of gear. Holders of interim-use permits or entry permits issued under this chapter are subject to all regulations adopted by the Board of Fisheries.

Also, AS 16.05.251(a)(2) allows the board to "adopt regulations it considers advisable" for "establishing open and closed seasons and areas for the taking of fish." These statutory provisions show that CFEC permits are fully subject to board regulation and thus not entitled to protection as property under the takings clauses of the state and federal constitutions.

*American Pelagic* and *Conti* examined three factors: transferability, exclusivity, and the ability of the government to revoke or modify the permits.[51] An analysis of those three factors in the present case provides further support for the conclusion that CFEC permits are not property for the purpose of takings analysis.

 First, while the CFEC permits at issue have limited transferability, unlike those in *American Pelagic* and *Conti*, transfer of the permits is subject to approval by the CFEC.[52] Permit holders may not lease their permits[53] and permits cannot be en-

---

**42.** *Id.* at 1340.

**43.** *Id.* at 1341.

**44.** *Id.* at 1341–42.

**45.** 379 F.3d 1363 (Fed.Cir.2004).

**46.** *Id.* at 1366, 1374.

**47.** *Id.* at 1374.

**48.** *Id.* at 1379–80.

**49.** AS 16.43.150(e).

**50.** *See* AS 16.43.010–.970; AS 16.05.251.

**51.** *American Pelagic*, 379 F.3d at 1374; *Conti v. United States*, 291 F.3d 1334, 1341–42 (Fed.Cir. 2002).

**52.** *See* AS 16.43.170.

**53.** *Grunert v. State*, 109 P.3d 924, 934 (Alaska 2005).

cumbered except to secure a purchase money loan under highly regulated conditions.[54] If a permit holder attempts to transfer a permit in a manner inconsistent with state statute, the transfer is void.[55] Further, the pool of eligible transferees is limited. The proposed transferee must "demonstrate the present ability to participate actively in the fishery" and must show that the transfer does not violate any state law or regulations.[56] Only natural persons may be permit holders.[57] Certain permit holders are completely prohibited from transferring their permits.[58] Based on these factors, the limited transferability of the permits does not reach the requisite level for consideration as property.[59]

Second, as discussed above, a CFEC permit provides exclusive rights only to the extent necessary to achieve the purposes of limited entry. Imbuing permits with protection from government takings is not necessary for those purposes and therefore would violate article VIII, section 3, and article VIII, section 15, of the state constitution.

Finally, the legislation creating the CFEC permit system explicitly reserves the power for the legislature to revoke or modify the permits [60] and for the board to regulate fishing.[61] In delegating to the board the right to regulate fishing, the legislature also delegated the power to allocate fish between competing uses in a manner that can affect the value of CFEC permits. In sum, analysis of the three factors discussed in *American Pelagic* and *Conti* leads to the conclusion that a CFEC permit is not a property interest requiring just compensation when regulations affect its value.

The salmon fishers argue that because we held in *Miner's Estate* that applicants for entry permits have a "property interest" for due process purposes,[62] entry permits are property for purposes of a takings claim. While we held in *Miner's Estate* that an applicant for a CFEC permit has a "property interest entitled to due process protection," [63] it does not necessarily follow that a CFEC permit is property that requires just compensation when its value decreases due to valid state regulation. The United States Supreme Court, in *Lingle v. Chevron U.S.A. Inc.*, emphasized that takings analysis is not the same as due process analysis.[64] Further, there are other examples of licenses that are entitled to due process protections but not takings protections. We have held that "[a] driver's license represents an important property interest which is protected under the due process clause of the Alaska Constitution," [65] but we have never recognized such an interest under the takings clause. If driver's licenses were also given property status for takings purposes, then drivers could potentially bring regulatory takings claims for the effect that typical traffic regulations, such as speed limits, have on the value of their licenses. Similarly, a CFEC permit may convey a property interest for due process purposes, but a thorough analysis of the factors cited in *American Pelagic* and *Conti*

---

54. *See* AS 16.43.150(g).

55. AS 16.43.170(a).

56. AS 16.43.170(b).

57. *State, Bd. of Fisheries v. Grunert,* 139 P.3d 1226, 1239 (Alaska 2006).

58. *See* AS 16.43.170(e) ("The holder of an entry permit who qualified for that entry permit in a priority classification designated under AS 16.43.250(c) may not transfer that permit.").

59. The fishers' assertion that the CFEC permits are property because they can be used as collateral for certain loans is unavailing for these same reasons, because if there are limitations on the transferability of CFEC permits, then there must be similar limits on their use as collateral.

60. AS 16.43.150(e).

61. AS 16.43.950; *see also* AS 16.05.251(a)(2).

62. *Miner's Estate v. Commercial Fisheries Entry Comm'n,* 635 P.2d 827, 832 (Alaska 1981).

63. *Id.*

64. 544 U.S. 528, 540–43, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005) (holding that formula inquiring whether government regulation "substantially advances" a legitimate state interest is a due process inquiry and not an appropriate test for determining whether a taking has occurred).

65. *Javed v. Dep't of Pub. Safety, Div. of Motor Vehicles,* 921 P.2d 620, 622 (1996).

reveals that they should not be considered property for purposes of a takings challenge.

For these reasons, the superior court was correct to conclude that a CFEC permit is not property for purposes of the takings clauses of the Alaska and Federal Constitutions.

2. **Because the CFEC permits are not property, it is unnecessary to engage in per se or de facto takings analysis.**

■■ The salmon fishers argue that they have valid inverse condemnation claims notwithstanding the state's police powers over fishing. The state argues that CFEC permits are subject to regulations of the board, that the state's valid exercise of its traditional police power does not create a right to compensation, and that appellants cannot allege facts to support either a per se or de facto takings claim. As discussed above, CFEC permits are not property for purposes of a takings claim. Thus, because the first prong of the takings test is not met, it is unnecessary to proceed with a full takings analysis.

C. **The Superior Court Did Not Err in Concluding that Regulations Affecting the Value of Shore Fishery Leases Did Not Result in a Compensable Taking of the Leases.**

The superior court concluded that the shore fishery leases confer a limited property interest in submerged land but that there was no taking because the salmon fishers waived any compensation right when they entered into the leases. The superior court also reasoned that the salmon fishers would still not be entitled to compensation under takings analysis even if they had not waived the claim in their leases. The salmon fishers argue that they did not waive their right to bring a regulatory takings claim because "no part of the shore fishery leases ... can reasonably be construed as a waiver of the lessee's right to bring an action asserting inverse condemnation." The state responds that the shore fishery leases grant only a

limited interest in land subject to all board regulations, that fisheries management represents a traditional police power rather than an eminent domain power, and that the salmon fishers cannot allege facts to support a per se or de facto takings claim. We agree with the state.

1. **The superior court did not err in concluding that the shore fishery leases convey only a limited interest in submerged land.**

■■ The superior court concluded that the shore fishery leases convey a property interest in submerged land but not in the water above the land or the fish in the water. The state and the salmon fishers appear to agree with the superior court's conclusion, but they seem to disagree on the implications of that conclusion. The state reasons that "lease holders have never obtained a property interest that guarantees any level of fishing opportunity or allows violation of the Board's fishery regulations."

Alaska Statute 38.05.082(e) states, "[t]he lease of submerged land conveys no interest in the water above the land or in the fish in the water." This language indicates that shore fishery leases convey a property interest in submerged land which must be justly compensated if physically taken from the lessee. However, the language also states that the lease grants no property right in the water or in the harvest of fish. Shore fishery leases were never intended to convey more than a limited property interest. Rather, they were intended to provide the mere right to exclude other set net fishers. They are issued at a nominal cost and the annual rent is also nominal, with annual rent set at a rate only "equal to the administrative costs involved in processing the leasehold applications."[66] Furthermore, no permanent improvements are allowed on a shore fishery lease.[67] If a shore fishery lease is taken by another government entity, all the lessee is entitled to is an abatement of rents. Thus, the superior court correctly recognized that the property interest granted in the shore

---

66. AS 38.05.082(c).

67. 11 AAC 64.060 (2008).

fishery leases is limited to an interest in submerged land and does not include the right to harvest fish free of state regulation. Therefore, a takings analysis must focus solely on the effects the regulations may have had on an interest in the submerged land alone.

2. **The superior court did not err in concluding that the regulations did not effect a taking of the shore fishery leases because the leases contain language permitting the regulations at issue.**

 The superior court concluded that the salmon fishers "contracted away" their ability to bring a successful takings claim involving the regulations at issue when they signed the shore fishery lease agreements. The salmon fishers argue that they did not expressly nor implicitly waive their takings claims by signing the leases. The state responds that the salmon fishers never had a property right (the right to use "leased land in violation of valid Board regulations") to waive, but that if waiver analysis is used, the terms of the lease would constitute an express waiver of any takings claim challenging valid regulations of the board.

 Under Alaska law, the right to compensation for a taking can validly be waived or contracted away in the terms of a lease.[68] In determining what rights were conveyed with a shore fishery lease, it is necessary to examine the actual language of the lease. The lease agreement states:

> This lease does not limit the power of the State of Alaska, its political subdivisions, or the United States of America to enact and enforce legislation or to adopt and enforce regulations or ordinances affecting, directly or indirectly, the activities of the lessee or its agents in connection with this lease or the value of the interest held under this lease.

The terms of the lease agreement indicate that the superior court was correct in finding that the salmon fishers "entered into an agreement that contracted away their right to compensation for a non-physical taking

and agreed to a lease that did not limit the power of the Board to enforce regulations that affected the value of the interest." The lease itself explicitly gives the state the power to adopt regulations affecting the value of the lessee's property interest. The language is clear and unambiguous in allowing state regulations to affect the value of the lease without limitation. Thus, based on the plain language of the lease, the salmon fishers lack a valid takings claim challenging the effect the regulations have on the value of their shore fishery leases.

## V. CONCLUSION

Because the entry permits are not property for purposes of constitutional takings analysis and because no compensable taking of the shore leases occurred, we AFFIRM the decision of the superior court in all respects.

**68.** *Wessells v. State, Dep't of Highways,* 562 P.2d 1042, 1045 (Alaska 1977).