Sherman C. "Red" SMITH, Appellant,

v.

STATE of Alaska, and Governor Sean Parnell, Commissioner of Department of Natural Resources Thomas Irwin, and Director of Department of Natural Resources Richard Mylius, Individually, Appellees.

No. S–14222.

Supreme Court of Alaska.

April 27, 2012.

Rehearing Denied July 11, 2012.

Sherman C. "Red" Smith, pro se, Cooper Landing, Appellant.

Lance B. Nelson, Senior Assistant Attorney General, Anchorage, and John J. Burns, Attorney General, Juneau, for Appellees.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

---

*OPINION*

FABE, Justice.

# I.   INTRODUCTION

Sherman "Red" Smith built and operated a sawmill on 14 acres of land under a special-use permit from the U.S. Forest Service. He alleges that the State of Alaska acquired title to the land and conveyed it to a third party without acknowledging Smith's claim or compensating him for his improvements. The last disputed conveyance of the land took place in 1983. The superior court dismissed Smith's claim, finding it to be time-barred under any applicable statute of limitations. The superior court also ruled in favor of the State on two alternative grounds: first, concluding that sovereign immunity bars fraud actions against the State and sec-ond, determining that res judicata bars the relitigation of a claim the superior court previously dismissed in 2007. Smith appeals, arguing that statutes of limitations cannot bar claims brought for the vindication of constitutional rights. Because statutes of limitations do apply to constitutional claims, and because Smith has not alleged harm amounting to a continuing violation, we affirm the superior court's dismissal of Smith's claim as time-barred. We also affirm the superior court's alternative finding that the 2007 dismissal of Smith's previous claim bars his current action.

# II.   FACTS AND PROCEEDINGS

## A.   Facts

Sherman Smith received a permit from the U.S. Forest Service in 1959 to operate a sawmill on approximately 14 acres of land near Cooper Landing. The Forest Service later explained that it granted Smith the permit in order to facilitate the salvage of timber from a recent fire in the area. After receiving the permit, Smith installed a sawmill, improved access to the site, and cleared and graveled about five acres of the land. From 1962 to 1964 Smith leased the land to a sawmill operator who, as part of his lease payments to Smith, built a water well, waste-water system, shed, and house.

The Forest Service temporarily shut down Smith's operations in September 1964, alleging that Smith's compliance with the terms of his permit was "far from satisfactory." In February 1965 the Forest Service informed Smith in a letter that the scope of his sawmill permit would be revised. The letter stated that because the original purpose of the permit—to remove fire-killed timber—had largely been accomplished, the permit for Smith's activities would be changed from a "free use to a charge basis" effective January 1, 1966, and the covered land would be reduced to "the land actually needed for [Smith's] operation."

Smith replied to the Forest Service protesting its proposed changes to his permit and requesting title to the sawmill site. The Forest Service responded to Smith's concerns in a March 1965 letter. This second

letter confirmed the permit area's reduction in size from approximately 14 acres to 4.66 acres, but it also noted that "[t]he size of the permit area may be increased at any time after your mill is in full operation and a need for this land can be clearly demonstrated." The Forest Service further stated that Smith had remedied many but not all of the issues surrounding his noncompliance with the permit, and it informed Smith that if he did not address the remaining issues, his mill would be shut down permanently by April 1, 1965.

In the March 1965 letter, the Forest Service also declined to recommend that Smith be granted title to the land. The Forest Service explained that its decision was based upon the State of Alaska's need to "select land for the expansion of communities." Specifically, the letter noted that the State was expected to apply for a "selection area" at Cooper Landing that was to include Smith's sawmill site. The Forest Service stated, however, that after the State selected the area, Smith would have "an opportunity to purchase the site of [his] sawmill operations."

The State of Alaska, Department of Natural Resources (DNR) did apply to select a 3,000–acre parcel of land at Cooper Landing—including Smith's permit area—from the federal government on December 29, 1967. In the application to the U.S. Bureau of Land Management, the DNR's acting director stated: "[T]o the best of my knowledge and belief, the land is unoccupied, unimproved, and unappropriated by any person claiming the land other than the applicant."

Ten years later, in November 1977, Smith filed an application for a trade and manufacturing site for the 14 acres of land he used to operate his sawmill. The Bureau of Land Management rejected Smith's application in May 1978. The State's selection of approximately 3,000 acres of land at Cooper Landing was also tentatively approved in May 1978, but because the rejection of Smith's application for a trade and manufacturing site had not yet been approved by the Interior Board of Land Appeals, the grant to the State excluded the 14 disputed acres. The Interior Board of Land Appeals affirmed the rejection of Smith's application in August 1979.

In November 1979 the Bureau of Land Management tentatively approved the disputed 14 acres for acquisition by the State. In the letter informing DNR of its decision, the Bureau of Land Management noted that the 14 acres in question were "not known to be occupied or appropriated under the public land laws."

After the State acquired the land, it transferred 5.65 acres—which Smith claims contained most of his improvements—to the Cooper Landing Community Club. The transfer took place on October 21, 1983. The deed to the community club provided that "[t]he lands contained herein shall remain in perpetuity with and for the benefit of the Cooper Landing Community."

## B. Proceedings

Smith filed a claim similar to the current action in the superior court at Kenai in 2006. Among other claims, Smith asserted in 2006 that the State took the 14–acre sawmill site "without due process and just compensation" and "fraudulently patented" 5.65 acres to Cooper Landing without acknowledging Smith's claim to the land or compensating him for his improvements. Smith named the State as a defendant along with several state government offices and individual officials. He sought title to the land so that he could in turn transfer it "legally" to Cooper Landing. Smith also requested damages including the "appraised value of the [improvements] he made ... [to] operate his sawmill." The superior court dismissed Smith's claim because it did not "survive any applicable statutes of limitations."

Smith filed his present claim on August 17, 2010, naming the State, Governor Sean Parnell, and two DNR officials as defendants. He argued that in its 1967 application for selection of lands and its subsequent conveyance to Cooper Landing, the State fraudulently denied knowledge of Smith's improvements to the land. Smith maintained that, contrary to the takings clauses of the state and federal constitutions, he was never compensated for the improvements he made to the land. He requested declaratory judgment of his interest in the land and a jury

trial to determine the monetary value of his improvements.

The State moved to dismiss Smith's complaint, maintaining that his action was barred under the doctrines of res judicata, the applicable statutes of limitations, and sovereign immunity under AS 09.50.250. The State noted that Smith's complaint did not allege any specific wrongdoing on the part of the individually named defendants. The parties also filed cross-motions for summary judgment.

The superior court granted the State's motions to dismiss and for summary judgment on January 12, 2011. The superior court concluded that Smith's action was barred by the ten-year statute of limitations for the recovery of real property, AS 09.10.030(a), and by sovereign immunity under AS 09.50.250(3), which provides that the State cannot be sued in a tort or contract action arising from "misrepresentation [or] deceit." The superior court granted summary judgment to the State, concluding that res judicata barred Smith from relitigating claims previously dismissed in 2007.

Smith moved for reconsideration, arguing that neither AS 09.10.030(a) nor AS 09.50.250(3) could "overturn[ ] or deny" rights granted by the state and federal constitutions. The superior court reaffirmed its dismissal of Smith's case on February 1, 2011. In its order on Smith's motion, the superior court explained that all civil suits, including constitutional claims, are subject to statutes of limitations unless the plaintiff can prove a continuing violation of his rights. Citing our decision in *Krause v. Matanuska–Susitna Borough*,[1] the superior court ruled that Smith's claim stemmed directly from "the original taking of the Cooper Landing

property for public use" and that no violation continued past that point.

Smith appeals, again contending that statutes of limitations do not apply to constitutional claims. He briefly addresses the State's arguments regarding res judicata and sovereign immunity in his reply brief. He also waives all claims against individual state officials, leaving the State as the only remaining defendant.

## III. STANDARD OF REVIEW

We review grants of motions to dismiss and grants of summary judgment de novo, "draw[ing] all factual inferences in favor of, and view[ing] the facts in the light most favorable to, the party against whom summary judgment was granted."[2] "We will affirm a grant of summary judgment if there are no genuine issues of material fact and the prevailing party was entitled to judgment as a matter of law."[3]

We apply our independent judgment when interpreting and applying statutes of limitations.[4] "A trial court's determination about which statute of limitations applies is a question of law."[5] Whether res judicata applies is also a question of law.[6] Questions of law are reviewed de novo, "adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[7]

## IV. DISCUSSION

### A. Smith's Claim Is Barred By Any Applicable Statute Of Limitations.

The superior court characterized Smith's claim as one of inverse condemnation of real property by the State, governed by the ten-year statute of limitations for recovery of real property found in AS 09.10.030(a).

1. 229 P.3d 168, 171–72 (Alaska 2010).

2. *Interior Cabaret, Hotel, Rest. & Retailers Ass'n v. Fairbanks N. Star Borough*, 135 P.3d 1000, 1002 (Alaska 2006) (internal footnotes omitted).

3. *Cragle v. Gray*, 206 P.3d 446, 449 (Alaska 2009) (citing *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005)).

4. *Id.* (citing *Fernandes v. Portwine*, 56 P.3d 1, 4 (Alaska 2002)).

5. *Id.* (citing *Sengupta v. Wickwire*, 124 P.3d 748, 752 (Alaska 2005)).

6. *McElroy v. Kennedy*, 74 P.3d 903, 906 (Alaska 2003).

7. *Kohlhaas v. State, Office of Lieutenant Governor*, 147 P.3d 714, 717 (Alaska 2006) (citing *Alaska Action Ctr., Inc. v. Municipality of Anchorage*, 84 P.3d 989, 991 (Alaska 2004)).

The superior court found that Smith's claim accrued when the State took title to Smith's sawmill site. Because that alleged taking occurred more than ten years before Smith brought this action, the superior court determined that the action was time-barred.[8] On appeal, Smith argues that there is no statute of limitations on constitutional claims and that AS 09.10.030(a), as state law, cannot "trump" the state and federal constitutions. But Alaska's statutes of limitations do apply to constitutional claims generally and to Smith's claim in particular.

All civil claims are governed by statutes of limitations. Alaska Statute 09.10.010 provides that "[a] person may not commence a civil action except within the periods described in this chapter after the cause of action has accrued, except when, in special cases, a different limitation is prescribed by statute." There is no exception for constitutional claims.[9] We have held specifically that certain statutes of limitations apply to claims brought under the takings clauses of the Alaska Constitution.[10] Smith's claim is not exempt from the limitations prescribed by law.

The superior court characterized Smith's claim as one of inverse condemnation falling under the ten-year statute of limitations found in AS 09.10.030(a).[11] Regardless of which statute of limitations best applies, however, Smith's claim accrued at the latest in 1983 when the State conveyed the land—27 years before Smith brought this action. Thus any conceivably applicable statute of limitations has long since expired.[12]

Smith argues in his reply brief that the statute of limitations should be tolled under the continuing violations doctrine. That doctrine "allows plaintiffs to establish an ongoing tort through incidents that occurred before the statute of limitations period and that continued into the limitations period."[13] But where a plaintiff's allegations of harm focus "on the initial actions taken by defendants, not on a continuing course of conduct," we will not find a continuing violation.[14] The doctrine applies not to an initial violation that causes alleged permanent

8. The superior court stated that the alleged injury occurred when the State "took title to the land in 1984." The record suggests that the State had acquired title to the land by 1983, when it conveyed the land to the Cooper Landing Community Club. The exact dates are inconsequential, as the transfers occurred at least 25 years before Smith brought his action.

9. See, e.g., Sengupta v. Univ. of Alaska, 21 P.3d 1240, 1247–49 (Alaska 2001) (concluding that free speech, due process, and equal protection claims filed under 42 U.S.C. § 1983 are governed by the two-year state statute of limitations for a personal injury action).

10. City of Kenai v. Burnett, 860 P.2d 1233, 1240 n. 13 (Alaska 1993) (reaffirming that inverse condemnation actions are subject to state statutes of limitations for adverse possession or ejectment, whichever applies); see generally 27 Am Jur.2d Eminent Domain § 794 (2011) ("[S]ince public policy requires the speedy resolution" of eminent domain proceedings, "it is customary [in many jurisdictions] to provide a much *shorter* period of limitations than in ordinary civil actions.") (emphasis added).

11. We have defined inverse condemnation as a suit for damages under the takings clause where the state "invades private property without instituting formal eminent domain proceedings or otherwise employs land use planning regulations which deprive a property owner of the 'economic advantages of ownership.'" Burnett, 860 P.2d at 1238. Smith did not own his sawmill site, but Alaska's constitution preserves a takings claim where the government involuntarily divests a person of improvements made to the land without "just compensation and by operation of law." Alaska Const. art. VIII, § 16; see also Vanek v. State, Bd. of Fisheries, 193 P.3d 283, 288 (Alaska 2008) (holding that article VIII, section 16 is "a broader conception of compensable takings" than provided for by the federal constitution). Even assuming that Smith had a compensable property interest in the improvements he made to the sawmill site, his action is subject to the limitations periods for either adverse possession or ejectment, "whichever applies." Burnett, 860 P.2d at 1240 n. 13. Under AS 09.10.030, the limitations period for ejectment is ten years. Under AS 09.45.052, a seven-year period applies when, as here, the adverse possessor acquires possession "under color and claim of title."

12. The "catch-all" statute of limitations, AS 09.10.100, establishes a ten-year limitations period for any action not otherwise provided for.

13. Reich v. Cominco Alaska, Inc., 56 P.3d 18, 26 (Alaska 2002).

14. Ocean Acres Ltd. P'ship v. Dare County Bd. of Health, 707 F.2d 103, 106 (4th Cir.1983).

harm, but instead to an ongoing series of incidents.

Smith does not allege continuing bad acts by the State. He recognizes that "the land involved now serves an important public purpose" and he "supports this current use." The claimed wrongdoing is the State's allegedly fraudulent selection of the land in 1979 and its transfer of the land to the Cooper Landing Community Club in 1983. Because no alleged violation has occurred since 1983, there is no continuing violation here.[15] As the Sixth Circuit has noted, to hold that a taking is continuous until it is reversed would mean that "all takings would constitute 'continuing violations,' tolling the statute of limitations" and "[t]here would effectively be no statute of limitations" in takings cases.[16] Because Smith's case is barred by any applicable statute of limitations and the continuing violations doctrine does not apply, we affirm the superior court's dismissal of Smith's claim.

### B. The Superior Court's 2007 Dismissal Of Smith's Prior Claim Bars His Current Action.

■ The superior court granted summary judgment to the State concluding that Smith's claim is barred by the operation of res judicata. Specifically, the superior court concluded that its 2007 final judgment dismissing Smith's substantially similar prior complaint operated to bar this subsequent action. Smith contests this point only summarily in his reply brief.[17]

■ A judgment in a prior action will bar a subsequent action if the prior judgment was: "(1) a final judgment on the merits, (2) from a court of competent jurisdiction, [and] (3) in a dispute between the same parties (or their privies) about the same cause of action."[18] The superior court entered an order of final judgment in 2007 dismissing Smith's claims on statute of limitation grounds and awarding attorney's fees and costs to the defendants. Under Alaska Civil Rule 41(b), involuntary dismissal of a case upon a defendant's motion and after consideration by the court "operates as an adjudication upon the merits." There is no dispute that the superior court had jurisdiction over the matter.

Smith's 2006 and 2011 complaints involved substantially the same parties and the same cause of action. In 2006 Smith named the State, the Office of the Governor, the "judicial branch," and several incumbent and former government officials as defendants.[19] In his current action, Smith named the State, the governor, and two DNR officials as defendants. We have held that individual defendants newly named "by virtue of their status as successors of previously named defendants" are considered the privies for previous parties for the purpose of the res judicata analysis because they "are essentially placeholders for previously named defendants."[20] Smith's claims against the governor and DNR officials were also asserted in 2006. As we noted in *DeNardo v. Barrans*, newly added commission members sued "simply ... in their capacity as board members" representing their agency, "not alleged to have committed any specific wrongful acts," are not considered new parties.[21] And Smith has waived all claims against the individual defendants in his reply brief on appeal. The State is therefore the only re-

---

**15.** *See Krause v. Matanuska–Susitna Borough,* 229 P.3d 168, 171–72 (Alaska 2010) (holding that when no action was alleged after the approval of a plat, no continuing violation occurred merely because the plat was allegedly wrongfully approved and recorded).

**16.** *Ohio Midland, Inc. v. Ohio Dep't of Transp.,* 286 Fed.Appx. 905, 913 (6th Cir.2008).

**17.** Smith notes that res judicata does not bar an appeal of a trial court's decision, but does not address the relevance of the 2007 dismissal of his prior claim.

**18.** *Matanuska Elec. Ass'n v. Chugach Elec. Ass'n,* 152 P.3d 460, 465 (Alaska 2007) (quoting *Mata-*

*nuska Elec. Ass'n v. Chugach Elec. Ass'n,* 99 P.3d 553, 561 n. 29 (Alaska 2004)).

**19.** In 2006 Smith named the following individual defendants: the governor, a former governor, the DNR commissioner, the attorney general, a former attorney general, an assistant attorney general, and a commissioner of the Alaska Department of Transportation.

**20.** *DeNardo v. Barrans,* 59 P.3d 266, 270 n. 19 (Alaska 2002).

**21.** *Id.*

maining defendant and was also named as a party in 2006.

The takings claim Smith asserted in 2006 is essentially the same as his current claim. Smith's 2006 complaint alleged that the State's characterization of the land as "unoccupied" was "either deliberate fraud or careless error," that the State cannot "pass clear title to lands it [did] not own," and that Smith's "equitable title" to the land "is currently the superior title . . . until such time as 'due process and just compensation', under Article VIII, section 16 [of the Alaska Constitution] has been afforded to [him]." Smith's takings claims are substantially identical, and he is barred from relitigating a claim that was dismissed in 2007.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's dismissal of Smith's claims as time-barred, and we AFFIRM the superior court's grant of summary judgment for the State on the ground of res judicata.

CHRISTEN, Justice, not participating.