**Jane DOE and John Doe, Petitioners,**

v.

**HUGHES, THORSNESS, GANTZ, POWELL & BRUNDIN, Respondents.**

**No. S–4543.**

Supreme Court of Alaska.

Oct. 9, 1992.

Rehearing Denied Dec. 10, 1992.

Sema Lederman, Hansen & Lederman, Anchorage, for appellants.

Stephen S. DeLisio, Jill E. Mickelsen, Staley, DeLisio, Cook & Sherry, Inc., Anchorage, for appellees.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

### ORDER

On consideration of the petition for rehearing filed on July 10, 1992,

IT IS ORDERED:

1. Opinion Number 3863, issued by the court on June 30, 1992, is WITHDRAWN.

2. Such opinion is replaced by Opinion Number 3891, issued on the date of this order.

3. Appellee's petition for rehearing is otherwise DENIED.

---

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

BURKE, Justice.

Jane and John Doe[1] filed this appeal when the superior court ordered their attorney malpractice action dismissed with prejudice. The court concluded, as a matter of law, that the defendant law firm had not been negligent. We reach the opposite conclusion and reverse.

I

When Jane Doe was unable to conceive, her sister, Mary Roe, agreed to be artificially inseminated, and to allow Jane to adopt the child produced by such means. The father of the child was John Doe, Jane Doe's husband. The Does hired Hughes, Thorsness, Gantz, Powell & Brundin, (hereafter Hughes, Thorsness) an Anchorage law firm, to handle the adoption.

In the course of obtaining the biological mother's consent to the adoption, Hughes, Thorsness learned that John Doe is part Chickasaw Indian. Because of the child's Indian heritage, Hughes, Thorsness became concerned about the requirements of the Indian Child Welfare Act. 25 U.S.C. §§ 1901–1963. Specifically, the firm was concerned about the need to obtain Mary Roe's consent to the adoption in conformity with the following provision:

Where any parent [of an "Indian child"] voluntarily consents ... to termination of parental rights, *such consent shall not be valid unless executed in writing and recorded before a judge of a court of competent jurisdiction and accompanied by the presiding judge's certificate that the terms and consequences of the consent were fully explained in de-*

*tail and were fully understood by the parent....*

25 U.S.C. § 1913(a) (emphasis added).[2]

Hughes, Thorsness secured Roe's consent to the adoption, in writing, as required by the Indian Child Welfare Act. However, despite its concern about the Act's other requirements, and its professed knowledge "that if the Act applied, the [Does] would have to comply with it,"[3] Hughes, Thorsness failed to secure completion of the additional steps needed to make the mother's consent "valid" according to § 1913. Instead, Hughes, Thorsness recommended that the superior court be allowed to determine whether the Act applied, and was content to rest on its oars when the court concluded that it did not.

Roe's consent to the adoption was accepted by the superior court in the form in which it was presented, and the court entered a final decree of adoption terminating the parental relationship between the child and Roe, its biological mother. A little more than a year later, Roe moved to have the decree vacated.

Roe's motion was made upon the ground that her consent to the termination of her parental rights was invalid, because it was not obtained in conformity with the requirements of the Indian Child Welfare Act. Specifically, she complained that her consent was not "recorded before a judge of a court of competent jurisdiction and accompanied by the presiding judge's certificate that the terms and consequences of the consent were fully explained in detail and were fully understood by the parent or Indian custodian." 25 U.S.C. § 1913(a).

Having lost confidence in Hughes, Thorsness, the Does hired Tugman & Clark, another Anchorage law firm. Tugman & Clark successfully defended the adoption

---

**1.** In the interest of privacy, fictitious names are used in this opinion.

**2.** 25 U.S.C. § 1903 provides in part:
For purposes of this chapter ... the term—
....
(4) "Indian child" means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is

eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe;
....
(9) "parent" means any biological parent ... of an Indian child....

**3.** Brief of Appellee at 3.

decree in the superior court, and when that court's decision refusing to vacate the decree was appealed to this court, the decision was affirmed. *In re Adoption of T.N.F.*, 781 P.2d 973 (Alaska 1989). Thus, despite the biological mother's challenge to the adoption, the adoption decree remained undisturbed. From the Does' standpoint, however, the challenge was a costly affair.[4]

## II

Subsequent to these events, the Does sued Hughes, Thorsness for malpractice. In their complaint they alleged that Hughes, Thorsness was negligent in failing to observe the requirements of the Indian Child Welfare Act when obtaining the natural mother's consent. Such negligence, according to the complaint, provided the biological mother with the ground that she later used to challenge the adoption. The Does asked the superior court for an award of damages, including the amount of Tugman & Clark's attorney's fees, their other costs in defending the adoption decree, and compensation for emotional distress they claim to have suffered as a result of the natural mother's challenge.

In the malpractice action, Hughes, Thorsness answered the complaint and moved for summary judgment; the superior court, after concluding that there were no genuine issues of material fact, granted the motion. In the court's view, "[t]he issue [in the case was] whether [Hughes, Thorsness] ... was liable to the [Does] for a mere error of judgment, or for a mistake in a point of law which, at the time of the advice given, had not been settled by the Alaska Supreme Court[,] and was a point of law [upon] which reasonable lawyers could differ." Holding that the defendant's conduct was not actionable under these circumstances, the court ruled in

Hughes, Thorsness' favor, and ordered the complaint dismissed. This appeal followed.

## III

In past cases involving claims of attorney malpractice, we have observed:

Professional malpractice consists of four elements: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence."

*Belland v. O.K. Lumber Co.*, 797 P.2d 638, 640 (Alaska 1990) (quoting *Linck v. Barokas & Martin*, 667 P.2d 171, 173 n. 4 (Alaska 1983)). We need be concerned about only two of these elements in the case at bar: Hughes, Thorsness' duty to its clients, and the firm's alleged breach of that duty.[5] The remaining issues in the case, whatever they may be, are not before us in this appeal.

## IV

When Hughes, Thorsness undertook to represent the Does in the adoption, it was required to "have and use the knowledge, skill and care ordinarily possessed and employed by members of the [legal] profession in good standing." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 32, at 187 (5th ed. 1984). Hughes, Thorsness knew that the child being adopted by its client, Jane Doe, was part Chickasaw Indian. Arguably then the adoption was subject to the consent requirements of the Indian Child Welfare Act. Under these circumstances, the risk in failing to obtain the biological mother's consent to the adoption in conformity with the Act should have been clear to any

---

**4.** Tugman & Clark tendered the cost of defending the adoption decree to Hughes, Thorsness, but the tender was refused. Hughes, Thorsness did, however, provide Tugman & Clark with the results of its research on the applicability of the Indian Child Welfare Act, and offered various suggestions on how the adoption decree might be defended.

**5.** The ruling below dealt only with Hughes, Thorsness' duty to the Does, and the alleged breach of that duty. The remaining elements of the Does' malpractice claim have not been reached by the superior court, and we do not address them here.

attorney possessed of the required level of professional competence. Such failure obviously exposed Hughes, Thorsness' clients to the risk of a later challenge to the adoption decree—in this instance the risk soon became a reality—upon the ground that the biological mother's consent to the adoption was not obtained in conformity with the statutory requirements set forth in 25 U.S.C. § 1913(a). Nevertheless, Hughes, Thorsness failed to obtain the natural mother's consent in the proper form.

■ According to its brief, Hughes, Thorsness chose not to take this important step because of the added cost to its clients:

> To comply with this requirement, the [Does] would have to either arrange for the [natural mother] to come to Anchorage and appear before the court at the adoption or file an ancillary action in California. Either avenue would require more fees than the [Does] anticipated.

Brief of Appellee at 3.[6] (Citation omitted).

There is evidence that the Does were concerned about the cost of the adoption. There is also evidence that Hughes, Thorsness informed the Does that "if the [Indian Child Welfare Act] applied it would be necessary to comply with its provisions because the adoption would either not be approved or would be subject to future challenge." Robert L. Manley Aff., R. 12–16. Hughes, Thorsness did not, however, *advise its clients to secure the natural mother's consent in conformity with the Act, despite the added cost.* Instead, it "recommended" that the Does "file an application with the [superior] court, prior to

the adoption, to determine whether or not the [Act] applied." *Id.* Because the Does believed, at that time, that the natural mother "would never challenge the adoption or revoke her consent," they "agreed to proceed consistent with whatever ruling the court made on the issue." *Id.*

■ An important part of an attorney's duty to a client is the duty to *advise* the client of action the client should take in a given set of circumstances. Given the circumstances present in this case, we believe *there was only one prudent course of action open to the Does*—namely, to obtain the natural mother's consent to the adoption in full conformity with the more onerous and costly consent requirements of the Indian Child Welfare Act. By failing to advise its clients to take this added step, despite the cost, Hughes, Thorsness also failed in its duty to use the skill, prudence, and diligence required of an attorney practicing within this jurisdiction. By doing so, Hughes, Thorsness breached the duty of care owed to its clients, rendering the firm guilty of negligence, or professional malpractice, as a matter of law.[7]

## CONCLUSION

For the reasons stated in this opinion, we hold that Hughes, Thorsness is liable, as a matter of law, for its failure to obtain the biological mother's consent to the adoption of her child in conformity with the requirements of the Indian Child Welfare Act. The judgment of the superior court is reversed and remanded, with instructions that the court enter judgment in the Does'

---

6. Hughes, Thorsness claims that its actions were influenced by "the [Does'] preoccupation with incurring legal expenses." Brief of Appellee at 3. The avoidance of unnecessary fees and costs is part of every attorney's ethical responsibility to the attorney's client. Alaska Code of Prof. Resp. DR 2–106 (lawyers shall not enter agreements for, charge or collect excessive fees). An attorney, however, is not free to neglect a measure that will protect a client from a clearly foreseeable risk of harm, merely because there will be some additional cost to the client if the measure is taken. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 43, at 280 (5th ed. 1984) (negligence requires a foreseeable risk and unreasonable conduct).

7. Unlike the superior court, we are not impressed with Hughes, Thorsness' argument that it cannot be found liable because it was guilty of only an "error in judgment" concerning a matter about which the law remained unsettled. Any uncertainty there might have been about the applicability of the Indian Child Welfare Act made Hughes, Thorsness' failure to obtain compliance with the Act *more, rather than less, blameworthy.* The cost of compliance with the act would be by all measures slight when compared to the potential cost of not complying with the Act. The decision to ignore the additional steps required for a "valid" consent was anything but the act of a reasonably prudent lawyer.

favor on the issue of Hughes, Thorsness' negligence. All remaining issues in the case are left for determination by the superior court after further proceedings.

REVERSED and REMANDED, with INSTRUCTIONS.