Robin L. PEPPER, Appellant,

v.

ROUTH CRABTREE, APC; Richard L. Crabtree; and CRI, LLC a/k/a Checkrite of Anchorage, Appellees.

No. S–13042.

Supreme Court of Alaska.

Nov. 20, 2009.

James J. Davis, Jr., Alaska Legal Services Corporation, Anchorage, and Deepak Gupta, Public Citizen Litigation Group, Washington, D.C., for Appellant.

Richard L. Crabtree and Ryan W. Fitzpatrick, Routh Crabtree, APC, Anchorage, for Appellees.

Joanne S. Faulkner, National Association of Consumer Advocates, New Haven, Connecticut, Charles Delbaum, National Consumer Law Center, Boston, Massachusetts, and Thomas M. Daniel, Perkins Coie, LLP, Anchorage, for Amici Curiae.

Before: FABE, Chief Justice,
EASTAUGH, CARPENETI, WINFREE, and CHRISTEN, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Robin Pepper sued an Anchorage debt collection agency and its lawyers, claiming that they violated Alaska's Unfair Trade Practices and Consumer Protection Act (UTPA) when they: (1) sued Pepper in state district court without first sending a written demand, (2) misrepresented to the court that Pepper was competent, and (3) applied for default judgment without first informing Pepper's attorney. The superior court granted the defendants' motion to dismiss for failure to state a claim, reasoning that the *Noerr–Pennington* doctrine required the court to strictly construe the UTPA to avoid burdening conduct protected by the petition clauses of the United States and Alaska Constitutions. Because we conclude that it would not unconstitutionally burden the defendants' petitioning activities to require them to litigate debt collection claims in a fair manner, we reverse the dismissal of Pepper's complaint.

## II. FACTS AND PROCEEDINGS

In February and June 2004 Robin Pepper allegedly wrote fifteen checks on which payment was later refused.[1] The affected merchants assigned the dishonored checks, which totaled $518.80, to CRI, LLC ("Checkrite") for collection. Checkrite retained attorney Richard Crabtree and his law firm, Routh Crabtree, APC, to recover the amount owed on the checks.

In October 2006 Routh Crabtree mailed to Pepper a demand letter on behalf of its client in an attempt to recover the amount owed on the dishonored checks. Routh Crabtree mailed the letter to "601 E. 5th Avenue" in Anchorage; that address did not match the one on Pepper's dishonored checks, was not an address at which Pepper had ever lived, and did not correspond to any actual building.

1. This description of the facts is taken from the pleadings and materials filed by the parties before the superior court granted the motion to dismiss. We accept all well-pleaded allegations as factually true and provable. In describing the facts we are not resolving possible factual disputes. Any factual disputes will have to be litigated on remand in accordance with the legal conclusions we reach in this opinion.

In December 2006 Checkrite sued Pepper in state district court, alleging that she had not tendered the amount owed.[2] On April 14, 2007, Pepper was personally served with a summons and notice of judicial assignment. By letter of April 25, an attorney from Alaska Legal Services Corporation (ALSC) notified Routh Crabtree that ALSC was representing Pepper. The letter claimed that Checkrite had "failed to effectuate service" on Pepper and stated that ALSC would not file an answer until proper service was made.

Without notifying ALSC, Checkrite applied on May 30, 2007 for entry of default and default judgment against Pepper, claiming that "[t]he time within which [Pepper] could plead in or otherwise defend this action has expired." Checkrite's application stated that, "[u]pon information and belief, based on the Defense Manpower Data Center search certificate ... [Pepper] is not an infant, incompetent, nor a member of the Armed Forces of the United States protected by the Civil Relief Act."[3] The clerk of court entered default against Pepper on June 11, 2007.

On July 16, 2007, Checkrite, through Routh Crabtree, withdrew its application for default judgment on the ground an ALSC attorney had "communicated to the undersigned his intent to represent the defendant in the instant case."

Also on July 16, Pepper sued Routh Crabtree, Richard Crabtree, and CRI, LLC in superior court, alleging multiple instances of "unfair or deceptive acts or practices" in violation of the UTPA.[4] Pepper's complaint alleged that: (1) the written demand was not made in accordance with AS 09.68.115, which requires that the demand be "personally delivered or sent by first class mail to the address shown on the dishonored check";[5] (2) Pepper is mentally disabled, and the defendants swore out a false averment to the court by stating that Pepper was not incompetent; and (3) the attorney defendants, Routh Crabtree and Richard Crabtree, violated Alaska law that required them to notify Pepper's attorney before applying for entry of default judgment against her.[6]

The three defendants, represented by Routh Crabtree, moved to dismiss Pepper's suit under Alaska Civil Rule 12(b)(6) for failure to state a claim upon which relief could be granted. Treating Pepper's factual allegations as admitted for the purpose of the motion to dismiss, Routh Crabtree argued that Pepper's claims impermissibly sought to impose civil liability on the defendants for exercising their constitutional right to petition the government.[7]

The superior court reasoned that Routh Crabtree's litigation activities "constitute conduct clearly protected" by the petition clauses of the United States and Alaska Constitutions. It then held that the *Noerr–Pennington* doctrine required the court to construe the UTPA so as to avoid burdening

---

2. We assume for purposes of this appeal that Checkrite at all times acted through Routh Crabtree in prosecuting its claim against Pepper.

3. Defense Manpower Data Center is an organization of the Department of Defense that maintains the official database on eligibility for military medical care and other eligibility systems.

4. AS 45.50.471–.561. Pepper's complaint alleged that the "[d]efendants" had violated AS 45.50.471(a), which states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful."

   Unless context requires greater specificity, we refer to the three defendants collectively as "Routh Crabtree," the first-named defendant in the caption of Pepper's complaint.

5. AS 09.68.115(d)(3).

6. *See Brown v. Lange,* 21 P.3d 822, 829 (Alaska 2001); *City of Valdez v. Salomon,* 637 P.2d 298,

299 (Alaska 1981); *Cook v. Aurora Motors, Inc.,* 503 P.2d 1046, 1049 n. 6 (Alaska 1972); *see also* AMERICAN COLLEGE OF TRIAL LAWYERS, CODE OF TRIAL CONDUCT Standard No. 13(b) (1994) ("When a lawyer knows the identity of a lawyer representing an opposing party, the lawyer should not take advantage of the opposing lawyer by causing any default or dismissal to be entered without first inquiring about the opposing lawyer's intention to proceed.").

7. The First Amendment to the United States Constitution provides in relevant part that "Congress shall make no law respecting ... the right of the people peaceably ... to petition the Government for a redress of grievances." Article 1, section 6 of the Alaska Constitution provides in relevant part: "The right of the people peaceably ... to petition the government shall never be abridged."

such conduct, unless the UTPA "clearly" covers the specific conduct at issue.[8]  Because it concluded that the UTPA did not " 'clearly' provide that Defendants['] alleged activities violate[d] that statute," the court granted Routh Crabtree's motion and dismissed Pepper's complaint with prejudice as to all three defendants.

Pepper appeals.

## III. DISCUSSION

### A. Standard of Review

■■■  We review de novo an order dismissing a complaint on the basis of Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[9]  When reviewing an order on a motion to dismiss, we deem all facts in the complaint to be true and provable.[10]  We will affirm a superior court's grant of a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle her to relief.[11]

■  We review questions of statutory and constitutional construction de novo, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.[12]

### B. Whether It Was Error To Hold that Routh Crabtree's Conduct Was Entitled to *Noerr–Pennington* Immunity

Pepper argues that the UTPA covers unfair and deceptive debt-collection practices that occur in the context of litigation and contends that neither *Noerr–Pennington*, nor the petition clause on which that doctrine was based, immunizes these practices. Routh Crabtree responds that the superior court properly dismissed the complaint based on "the protection afforded by the Petition Clause[s] of the U.S. and Alaska constitutions."

Routh Crabtree argued below that both constitutions protected its right to petition, and the superior court so held.  Nevertheless, because we have never meaningfully addressed the state petition clause and have never implied that it is more protective than the federal clause, we will assume that the relatively sophisticated federal authority on the topic controls in this case.

The *Noerr–Pennington* doctrine initially evolved out of two Supreme Court antitrust cases: *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*[13] and *United Mine Workers v. Pennington.*[14]  The Court established in those cases that parties could not "base a Sherman Act conspiracy on evidence consisting entirely of activities of competitors seeking to influence public officials."[15]  The Court held in *Noerr* that the Sherman Act was not intended to prohibit persons from associating "in an attempt to persuade the legislature or the executive to take particular action with respect to a law," notwithstanding whether the attempt was motivated by an anticompetitive purpose.[16]  The Court reasoned that "[t]he right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to in-

---

8.  *Cf. K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 724 (Alaska 2003) ("The *Noerr–Pennington* doctrine evolved out of two United States Supreme Court cases in which the Court held that those who attempt to influence legislative and executive officials are immune from antitrust liability.  The Court later extended the doctrine to include attempts to influence adjudicatory proceedings before the courts and administrative agencies.") (footnotes omitted).

9.  *Vanek v. State, Bd. of Fisheries*, 193 P.3d 283, 286 (Alaska 2008).

10.  *Id.* at 286 (citing *Catholic Bishop of N. Alaska v. Does 1–6*, 141 P.3d 719, 722 (Alaska 2006)).

11.  *Valdez Fisheries Dev. Ass'n, Inc. v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657, 664 (Alaska 2002).

12.  *State v. Dupier*, 118 P.3d 1039, 1044 (Alaska 2005).

13.  *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).

14.  *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

15.  *Id.* at 669, 85 S.Ct. 1585.

16.  *Noerr*, 365 U.S. at 136, 81 S.Ct. 523; *see also Pennington*, 381 U.S. at 669, 85 S.Ct. 1585.

vade these freedoms."[17]

The Court later extended the *Noerr–Pennington* doctrine to include attempts to influence adjudicatory proceedings before administrative agencies and courts.[18] And by analogizing to *Noerr–Pennington*, the Court has twice applied petition-clause immunity outside the antitrust arena, both times in cases involving the interpretation of the National Labor Relations Act (NLRA).[19] The Court held in those cases that "[t]he filing and prosecution of a well-founded lawsuit may not be enjoined as an unfair labor practice, even if [the lawsuit] would not have been commenced but for the plaintiff's desire to retaliate against the defendant for exercising rights protected by the [NLRA]."[20]

The United States Court of Appeals for the Ninth Circuit has interpreted the Supreme Court's decisions as establishing that "the principles of statutory construction embodied in the *Noerr–Pennington* doctrine apply with full force in other statutory contexts."[21] In *Sosa v. DIRECTV*, the Ninth Circuit therefore recognized that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct."[22] DIRECTV had sent demand letters to over 100,000 individuals, falsely asserting that its records showed the recipients had used specialized equipment to steal its signal.[23] DI-

RECTV's demand letters threatened legal action unless the recipient forfeited the equipment and paid a sum of money to settle the claim.[24] Sosa sued DIRECTV for violating the Racketeer Influenced and Corrupt Organizations Act (RICO).[25] The district court dismissed Sosa's complaint.[26]

On appeal, the Ninth Circuit reasoned that "the *Noerr–Pennington* doctrine stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause."[27] Refining the methodology the Supreme Court used in *BE & K Construction Co. v. National Labor Relations Board*,[28] the Ninth Circuit reasoned that determining whether *Noerr–Pennington* immunity applies in any given case involves a three-step analysis.[29] Under the *Sosa* approach, the court must first determine whether the threat of adverse adjudication burdens the defendant's petitioning rights.[30] If it does, the court must proceed to the second step of the analysis and "determine whether the burden identified may be imposed consistently with the Constitution."[31] If "there is a substantial question that it may not" be imposed consistently with the constitution, then the court must proceed to the third and final step to determine whether the statute can be construed to avoid burdening

**17.** *Noerr*, 365 U.S. at 138, 81 S.Ct. 523.

**18.** *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

**19.** *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 527, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002); *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 743, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983).

**20.** *Bill Johnson's*, 461 U.S. at 743, 103 S.Ct. 2161; *see also BE & K*, 536 U.S. at 527, 122 S.Ct. 2390.

**21.** *Sosa v. DIRECTV*, 437 F.3d 923, 930 (9th Cir.2006).

**22.** *Sosa v. DIRECTV*, 437 F.3d 923, 929 (9th Cir.2006) (citing *Empress LLC v. City & County of S.F.*, 419 F.3d 1052, 1056 (9th Cir.2005)).

**23.** *Id.* at 926–27.

**24.** *Id.* at 927.

**25.** *Id.*

**26.** *Id.*

**27.** *Id.* at 931.

**28.** *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002).

**29.** *Sosa*, 437 F.3d at 930 (citing *BE & K*, 536 U.S. at 525, 122 S.Ct. 2390).

**30.** *Id.* at 932.

**31.** *Id.* This second step essentially asks whether the alleged conduct was petitioning activity, non-petitioning activity, or activity incidental to petitioning. *See Sosa*, 437 F.3d at 933 ("In analyzing this question, we must consider whether the demand letters constitute either protected petitioning activity or activity [incidental to petitioning].").

the petitioning activity.[32] The Ninth Circuit held that Sosa's claims were properly dismissed because *Noerr–Pennington* required the court to construe RICO narrowly to avoid burdening activity arguably falling within the scope of the petition clause.[33]

■ In arguing below that the *Noerr–Pennington* doctrine immunized the defendants from a lawsuit alleging violations of Alaska's UTPA, Routh Crabtree principally relied on the Ninth Circuit's expansive interpretation of that doctrine. The superior court appears to have relied on *Sosa* in dismissing Pepper's action. It stated that Routh Crabtree's activities "constitute conduct clearly protected by the Petition Clauses." Therefore, "[u]nder the *Noerr–Pennington* doctrine, the court must construe Alaska's UTPA to avoid burdening conduct that implicates protections afforded by the Petition Clause unless the statute clearly provides otherwise."

Although we agree that the three-step *Sosa* analysis provides a convenient approach for considering whether *Noerr–Pennington* applies in a given case, we conclude that the analysis was not applied correctly in this case.

The first step of the *Sosa* analysis requires courts to identify what burden the threat of adverse adjudication would impose on the defendant's petitioning rights. In *BE & K*, the Supreme Court recognized that to find that an employer had violated the NLRA by filing unmeritorious suits against unions would be a "burden by itself," considering the legal consequences and reputational harm that would flow from that determination.[34] In *Sosa*, the Ninth Circuit concluded that to apply RICO liability against DIRECTV would "quite plainly burden DIRECTV's ability to settle legal claims short of filing a lawsuit."[35]

For purposes of applying the three-step *Sosa* analysis, we assume, without deciding, that if Pepper were to prevail on her UTPA claims, Routh Crabtree would suffer the same kind of burden identified in *BE & K*

because, under the UTPA, Routh Crabtree would owe Pepper costs, attorney's fees, and the greater of $500 or three times her actual damages.[36] Routh Crabtree's petitioning activity might also be burdened in the sense that Routh Crabtree could not engage in conduct that might increase its ability to secure favorable judgments for its clients. In this respect, we will assume, without deciding, that a successful claim by Pepper conceivably might burden Routh Crabtree's ability to obtain favorable judgments if the debtor were to fail to answer or appear on time.

The second step of the *Sosa* analysis requires courts to determine whether the potential burden can be imposed consistently with the constitution. It is on this point that Routh Crabtree's immunity argument fails. Even assuming Routh Crabtree would be somewhat burdened if Pepper's claims are successful, it is difficult to see how subjecting Routh Crabtree to UTPA liability for engaging in the conduct alleged here would chill its First Amendment right to petition the government for redress. Pepper is not challenging Routh Crabtree's rights to send pre-litigation demand letters, file suit to collect overdue money, seek default judgment against defendants who fail to appear or answer on time, or litigate its claims fully, consistent with well-known procedural, substantive, and ethical requirements. Her complaint only seeks to hold Routh Crabtree to account if the manner in which it allegedly undertook these activities was unfair, deceptive, and in violation of the UTPA. Allowing Pepper to pursue her UTPA claims may create additional incentives for Routh Crabtree to ensure that a compliant demand has been made, to ascertain the truth of its competency allegations, and to inform the debtor's known counsel of Routh Crabtree's intention to seek default judgment. Routh Crabtree has not persuasively demonstrated that Pepper's UTPA claims will, if successful, unduly restrict Routh Crabtree's right to

**32.** *Id.* at 932.

**33.** *Id.* at 942.

**34.** *See BE & K,* 536 U.S. at 530, 122 S.Ct. 2390.

**35.** *Sosa,* 437 F.3d at 932.

**36.** AS 45.50.531(a); AS 45.50.537.

petition the government for redress of grievances. Pepper's claims would appear to burden Routh Crabtree's petitioning activities no more than our rules of professional conduct or standards of practice already do. As Pepper contends, "no debt collector has a legitimate interest in pursuing collection litigation without notifying debtors, or in seeking to default incompetent debtors without notice to their lawyers or guardians."

Moreover, courts applying the federal counterpart of the UTPA, the Fair Debt Collection Practices Act (FDCPA), have not held that applying this statute to state court pleadings would burden petitioning rights. For example, in *Berg v. Blatt*, the United States District Court for the Northern District of Illinois declined to rely on the *Noerr–Pennington* doctrine to protect false representations in debt-collection complaints because it was "not persuaded that imposing FDCPA standards of accuracy and fairness on a state court filing constitutes any genuine burden." [37] The court held that the FDCPA "explicitly bars exactly this kind of speech in debt collection letters and other communications and extending this bar to state court filings does not run afoul of the *Noerr–Pennington* doctrine's goal of protecting the First Amendment right to petition the courts for redress." [38]

We conclude that Pepper's UTPA claims do not implicate the defendants' petition clause rights and that any burden that might result if Pepper's lawsuit is successful may be imposed on the defendants consistently with the federal and state constitutions. In light of this conclusion, we do not need to reach the third step of the *Sosa* analysis. We hold that it was error to dismiss Pepper's claims on *Noerr–Pennington* grounds. [39]

### C. Whether We Should Uphold the Superior Court's Decision on Alternative Grounds

Routh Crabtree also argues that the superior court's decision may be upheld on four alternative grounds. Routh Crabtree raised only one of these arguments in the superior court, which rejected the argument. [40] Routh Crabtree does not develop these arguments extensively. Although the arguments are ostensibly supported with case authority, on close examination that authority is either not on point or unpersuasive.

■ First, Routh Crabtree argues that any alleged violations are exempt from UTPA regulation under AS 45.50.481(a)(1) because they are already prohibited by the Alaska Rules of Civil Procedure and the

---

37. *Berg v. Blatt, Hasenmiller, Leibsker & Moore, L.L.C.*, No. 07 C 4887, 2009 WL 901011, at \*6 (N.D.Ill., March 31, 2009); *see also Gerber v. Citigroup, Inc.*, 2009 WL 248094, at \*5 (E.D.Cal., Jan.29, 2009) ("To find defendants immunized by the *Noerr–Pennington* doctrine would eviscerate the Fair Debt Collection Practices Act. Debt collectors should not be able to employ tactics forbidden by the FDCPA simply because they also happen to be lawyers, or because they are attempting to collect on a debt owed."); *Jordan v. Thomas & Thomas*, No. C–1–04–296, 2007 WL 2838474, at \*7 (S.D.Ohio, Sept.26, 2007) (holding that not applying FDCPA to false statements made to courts "would allow collectors ... to accomplish through official legal proceedings the unfair and harassing practices expressly prohibited by the FDCPA").

38. *Berg*, 2009 WL 901011, at \*6.

39. Pepper also argues that Routh Crabtree's activity is exempt from *Noerr–Pennington* immunity under the "sham exception." The United States Supreme Court held in the antitrust context that activity "ostensibly directed toward influencing

governmental action" does not qualify for *Noerr–Pennington* immunity if it is "a mere sham to cover an attempt to interfere directly with the business relationships of a competitor." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 51, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). Because we conclude that the *Noerr–Pennington* doctrine does not preclude Pepper's UTPA claims, we do not need to decide whether the sham exception applies in this case.

40. *Sopko v. Dowell Schlumberger, Inc.*, 21 P.3d 1265, 1269 (Alaska 2001) ("[W]e can affirm a grant of summary judgment on alternative grounds, *including grounds not advanced by the lower court or the parties*. Moreover, we will consider any matter appearing in the record, *even if not passed upon by the lower court*, in defense of the judgment.") (emphasis added); *Atcherian v. State, Dep't of Revenue, Child Support Enforcement Div.*, 14 P.3d 970, 974 n. 8 (Alaska 2000); *but see Vaska v. State*, 135 P.3d 1011, 1019 (Alaska 2006) (declining to affirm on legal theories raised for first time on appeal and remanding for consideration by appeals court on those theories).

Alaska Rules of Professional Conduct.[41] This court explained in *Smallwood v. Central Peninsula General Hospital* that AS 45.50.481(a)(1) "exempts unfair acts and practices from the purview of the UTPA 'only where [ (1) ] the business is both *regulated* elsewhere and [ (2) ] the unfair acts and practices are therein prohibited.' "[42] We have held that the Rules of Civil Procedure and the Rules of Professional Conduct are not the type of ongoing, careful regulation required to trigger an exemption under subsection .481(a)(1).[43] Even if they were, it is unlikely Routh Crabtree could show that the unfair acts alleged in this case were "prohibited" by such "regulation." [44]

■ Second, Routh Crabtree argues that applying the UTPA to a lawyer's representational activities would be "an unconstitutional infringement upon the exclusive jurisdiction of the court to regulate the practice of law." Routh Crabtree contends that only the entre-

preneurial aspects of lawyering, such as billing clients, should be subject to the UTPA. Routh Crabtree cites for support *Short v. Demopolis*, a Washington Supreme Court decision in which the court considered whether, under the state's Consumer Protection Act, a former client had a claim against a lawyer who delegated legal services to other attorneys without the client's consent.[45] But that court concluded that application of the act did not "trench upon the constitutional powers of the court to regulate the practice of law" because it did not purport to take away the court's power to admit, suspend, or disbar.[46] It favorably cited a Connecticut Supreme Court case that recognized both that "the judicial disciplinary system and consumer protection laws have different functions" and that there was "no reason why they cannot coexist." [47]

We conclude, as the Washington Supreme Court held in *Short*, that the attorney disciplinary system and consumer protection laws

---

**41.** AS 45.50.481(a)(1) states that with limited exceptions (none of which is relevant here), the UTPA does not apply to

an act or transaction regulated under laws administered by the state, by a regulatory board or commission[,] ... or officer acting under statutory authority of the state or of the United States, unless the law regulating the act or transaction does not prohibit the practices declared unlawful in AS 45.50.471.

Routh Crabtree specifically argues that misrepresentations to the court are prohibited under both Alaska Civil Rule 11 and Rule 3.3 of the Alaska Rules of Professional Conduct, and that seeking default judgment without first notifying the opposing party's counsel is proscribed under Alaska Civil Rule 55(c).

**42.** *Smallwood v. Cent. Peninsula Gen. Hosp.*, 151 P.3d 319, 329 (Alaska 2006) (emphasis added) (quoting *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 528 (Alaska 1980)).

**43.** *See Matanuska Maid, Inc. v. State*, 620 P.2d 182, 186 (Alaska 1980) (holding that "regulated" in the context of subsection .481(a)(1) is "clearly distinct from and involves something more than mere prohibition" and that "a more reasonable construction" is that subsection .481(a)(1) exempts only such conduct as is subject to "ongoing, careful regulation").

**44.** Although Routh Crabtree argues that Civil Rule 55 already prohibits parties from seeking default judgment without notifying opposing counsel, that rule creates different procedures depending on whether the non-moving party (or his or her attorney) "appears." Civil Rule

55(c)(1) states that "[i]f the party against whom default judgment is sought *has appeared in the action*, that party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least three days prior to a decision on the application." (Emphasis added.) If neither Pepper nor her attorney appeared before Routh Crabtree applied for default judgment, then its failure to provide notice to Pepper's lawyer did not necessarily contravene Civil Rule 55.

A close reading of Civil Rule 11 and Conduct Rule 3.3 suggests Routh Crabtree would similarly escape reproach for making misrepresentations to the court if it established that it performed reasonable inquiry into Pepper's competency and did not know that she was incompetent when it made its statements. Under Civil Rule 11, an attorney's signature on a pleading, motion, or other paper certifies only that the attorney has read the paper and that, to best of the attorney's "knowledge, information, and belief formed after reasonable inquiry," the pleading, motion, or other paper is well grounded in fact. Conduct Rule 3.3(a)(1) similarly states only that a lawyer shall not *knowingly* "make a false statement of material fact or law to a tribunal."

**45.** *Short v. Demopolis*, 103 Wash.2d 52, 691 P.2d 163, 163–64 (1984) (en banc).

**46.** *Id.* at 169–70.

**47.** *Id.* at 170 (citing *Heslin v. Conn. Law Clinic of Trantolo & Trantolo*, 190 Conn. 510, 461 A.2d 938 (1983)).

can coexist as long as the legislature does not purport to take away this court's exclusive power to admit, suspend, discipline, or disbar.

Third, Routh Crabtree argues that this court should "join the growing body of jurisdictions" that refuse to apply state UTPA statutes to a lawyer's representational activities. Routh Crabtree contends that only an attorney's entrepreneurial activities, such as soliciting or billing clients, should be subject to the UTPA, and that the activities that relate to the " 'pure' practice of law" must be excluded from UTPA coverage.

The United States Supreme Court held in *Heintz v. Jenkins* that the federal counterpart to the UTPA applies to attorneys who " 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." [48] We are likewise unpersuaded that a debt-collecting attorney should receive a special exemption from UTPA coverage.

■ Routh Crabtree's argument that attorney liability for UTPA violations would be inconsistent with an attorney's duty of undivided loyalty to his or her client is unpersuasive. Rules of professional conduct often create conflicts between attorneys' ethical obligations and their duties of loyalty and zealous advocacy. Applying ethical standards to debt-collecting attorneys does not offend the attorney-client relationship.

■ Finally, Routh Crabtree argues that Pepper's claim is not yet ripe for review because "claims alleging a misuse of legal proceedings may not be filed until such litigation has terminated." Routh Crabtree contends that the ripeness requirement for cases alleging malicious prosecution "should be applied with equal force in the instant action."

Imposing a termination requirement for malicious prosecution claims is appropriate because favorable termination of the offending proceeding is a required element for a malicious prosecution claim.[49] But Routh Crabtree's argument that a similar termination requirement should apply here is unpersuasive, because termination of the "underlying proceeding" in this case is not necessary to ascertain whether Pepper can prevail on her claims or whether she has been damaged. Moreover, other courts permit parties to advance claims under statutes comparable to the UTPA before the underlying action has terminated.[50]

We reject these four arguments at least in part because they are facially unpersuasive as presented.[51] We therefore decline to affirm the superior court's decision on any of these alternative grounds.

## IV. CONCLUSION

Because Pepper's claims will not unconstitutionally burden the defendants' petitioning activity, the defendants are not entitled to immunity under the *Noerr–Pennington* doctrine. We therefore REVERSE the superior court's order dismissing Pepper's complaint for failure to state a claim and remand for further proceedings.

---

**48.** *Heintz v. Jenkins,* 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995).

**49.** *Caudle v. Mendel,* 994 P.2d 372, 375–76 (Alaska 1999) (citing *Kollodge v. State,* 757 P.2d 1024, 1026 (Alaska 1988)).

**50.** *See, e.g., Heintz,* 514 U.S. at 293, 115 S.Ct. 1489 (allowing plaintiff's separate FDCPA action to proceed before termination of bank's suit to recover balance due on plaintiff's car loan).

**51.** In rejecting these arguments here, we do not mean to foreclose the possibility that future litigants might address these issues more persuasively on appeal.