L.D.G., INC. and Estate of Larry Gjovig, Appellants,

v.

Arthur S. ROBINSON, Appellee.

No. S–14427.

Supreme Court of Alaska.

Dec. 14, 2012.

As Modified March 12, 2013.

Mark A. Sandberg, Law Office of Mark A. Sandberg, and Peter A. Sandberg, Wuestenfeld & Corey, LLC, Anchorage, for Appellants.

Laura L. Farley, Farley & Graves, P.C., Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

A bar allowed a man to consume alcohol while he was visibly intoxicated, and the man murdered a woman later in the evening. The lawyer representing the bar in the subsequent dram shop action did not attempt to

add the murderer as a party for apportionment of fault. Following entry of a large judgment against the bar, the bar brought a legal malpractice suit against its attorney. The attorney moved to dismiss for failure to state a claim upon which relief could be granted, arguing that where case law is unsettled, as a matter of law an attorney cannot be held liable for an error in judgment. The superior court granted the motion and the bar appeals. Because the existence of unsettled law does not excuse an attorney from fulfilling a duty of care, we reverse and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

### A. Facts

Larry Gjovig was the sole shareholder of L.D.G., Inc., a corporation which owned and operated a bar. One night in 1998 the bar served R.V. Freeman alcohol; later that night Freeman shot and killed Tracy Eason.[1] Freeman subsequently was convicted of first-degree murder.[2]

In 2000 the personal representative of Eason's estate filed a wrongful death suit against L.D.G. and Gjovig (collectively L.D.G.), alleging L.D.G. violated Alaska's dram shop act when it served alcoholic beverages to Freeman while visibly intoxicated, proximately causing Eason's death.[3] The estate did not sue Freeman.[4]

L.D.G. retained Arthur S. Robinson to defend the suit. Robinson did not seek to join Freeman to the action or assert a third-party claim against him for allocation of fault.[5] The case proceeded to trial and was submitted to a jury. The jury found "an employee of the [bar] with criminal negligence allow[ed] R.V. Freeman to consume an alcoholic beverage in the bar when he was a drunken person."[6] The jury also found it was "more likely true than not true that, if R.V. Freeman had not been intoxicated, he would not have killed Tracy Eason."[7] Despite these findings, the jury declined to find that "the intoxication of R.V. Freeman [was] so important in bringing about the death of Tracy Eason that a reasonable person would regard it as a cause and attach responsibility to it," and therefore did not reach the question of damages.[8]

Following the jury's verdict, the estate moved for judgment notwithstanding the verdict and a damages trial. The superior court granted the motion, finding that "fair-minded jurors could not have concluded that the intoxication of the murderer, who they found would not have killed Tracy Eason but for that very intoxication, was not a substantial factor in this wrongful death."[9] The court noted difficulty impaneling a jury willing to find a liquor licensee liable, stating that "firmly held concepts of personal responsibility of the consuming patron, coupled with a perceived disparity in fault between a liquor provider and a murderer, troubled many potential jurors." The court also noted the problem "was exacerbated by a legal error of the defense" in failing to include the murderer as a party for allocation of fault.[10]

The superior court's decision effectively attributed 100% of the fault to L.D.G. After a trial on damages, the superior court entered judgment of $945,911.95 against L.D.G. We

1. *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1115 (Alaska 2009).

2. *Freeman v. State*, No. A–7658, 2002 WL 460222, at *1 (Alaska App., Mar. 27, 2002).

3. *L.D.G.*, 211 P.3d at 1116.

4. *Id.*

5. *See* AS 09.17.080 (providing for apportionment of damages in actions involving fault of more than one person); *see also* Alaska R. Civ. P. 14 ("At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.").

6. *L.D.G.*, 211 P.3d at 1116 (alteration in original).

7. *Id.*

8. *Id.* (alteration in original).

9. *Id.*

10. *See* AS 09.17.080(a)(2) (providing fault may not be allocated to person if "parties had a sufficient opportunity to join that person in the action but chose not to").

affirmed the judgment after L.D.G.'s appeal.[11] Robinson represented L.D.G. at all stages of the lawsuit and appeal.

## B. Proceedings

L.D.G. sued Robinson, alleging that Robinson's representation fell below the standard of care for an attorney practicing in Alaska when he did not attempt to add Freeman to the underlying action for allocation of fault. Robinson moved to dismiss for failure to state a claim.[12] Robinson argued that following *Loeb v. Rasmussen,*[13] Alaska's dram shop case law was unsettled whether alcohol sellers could apportion fault to consumers, and that an attorney cannot be liable for an error in judgment regarding an unsettled proposition of law.

L.D.G. opposed the motion, contending that this argument was rejected in *Doe v. Hughes, Thorsness, Gantz, Powell & Brundin.*[14] Robinson replied, in a manner somewhat contrary to his argument about unsettled law, that at the time of the underlying litigation Alaska's dram shop act "was an exceptional statute, intended to place the entire responsibility for the harm which occurred upon the liquor licensee," and that Robinson followed this existing law in L.D.G.'s representation. Robinson asserted that *Doe* was inapplicable because "the *Doe* attorneys knowingly failed to comply with existing law," but he again argued that other jurisdictions provide immunity for judgment errors regarding unsettled propositions of law.

At oral argument on the motion, Robinson argued that his duty was to "act in a manner consistent with the existing law," and because he did so, as a matter of law he was not liable for malpractice. L.D.G. argued that *Doe* requires an attorney to "weigh the benefit and the possible harms and see which course" to take, and that it was inappropriate to dismiss L.D.G.'s claim without granting the parties an opportunity to present expert evidence on the standard of care or an opportunity to determine Robinson's considerations (if any) in making the decision not to add Freeman.

The superior court granted Robinson's motion to dismiss. The court noted that the applicability of several liability to the dram shop statute was unsettled at the time of the underlying trial and was not resolved until ten years later in *Sowinski v. Walker.*[15] After noting that *Sowinski* did not "represent the standard of care as it existed" at the time of Robinson's representation, the superior court stated "[t]his issue is particularly suited for decision in a rule of law order as the court does not have to be concerned with a jury using hindsight to analyze [Robinson's] decision-making." The court concluded that "[a]t the time of the trial, *Loeb* was the effective law and Mr. Robinson did not, as a matter of law, breach his duty of care to his clients in applying that law to their case." The court mentioned but did not apply *Doe.*

L.D.G. moved for reconsideration, arguing that the court should reconsider its decision in light of *Doe*'s holding and *Loeb*'s express reservation for future consideration all issues related to multiple defendants and the several liability framework.[16] Robinson opposed, arguing that *Loeb* broadly precluded licensees from allocating fault to the consumer.[17]

The superior court denied L.D.G.'s reconsideration motion. It clarified that it did "not know whether [Robinson] vigorously re-

11. *L.D.G.,* 211 P.3d at 1136.

12. *See* Alaska R. Civ. P. 12(b)(6).

13. 822 P.2d 914, 919–20 & n. 15 (Alaska 1991) (holding in dram shop action brought by minor's estate that licensee could not assert comparative fault of minor who purchased alcohol, but in light of recent enactment of pure several liability "reserv[ing] for future consideration all issues related to multiple defendants").

14. 838 P.2d 804, 807 n. 7 (Alaska 1992) (noting law firm could be liable for malpractice in spite of argument that its action was only an "error in judgment" concerning unsettled law).

15. 198 P.3d 1134, 1140 (Alaska 2008) (holding that adoption of pure several liability supercedes *Loeb* and allows licensee to assert comparative fault of minor in dram shop action between minor and licensee).

16. *See Doe,* 838 P.2d at 807 n. 7; *Loeb,* 822 P.2d at 920 n. 15.

17. *Cf. Loeb,* 822 P.2d at 919–20.

searched case law in preparation for the underlying case" and noted that "[a]t the time, 'the dram shop statute was an exceptional statute where all fault was attributable to the alcohol seller.'" The court explained that attorneys are not required to anticipate future supreme court rulings and concluded that "[i]t does not matter whether [Robinson] failed to do his research or whether he 'carefully considered and researched the issue' at the time of the underlying case, [as] the law was unsettled." Again the court did not apply *Doe*.

L.D.G. appeals the dismissal of the action.

## III.  STANDARD OF REVIEW

"We review de novo an order dismissing a complaint ... for failure to state a claim upon which relief can be granted."[18] When reviewing such an order, we deem all facts alleged in the complaint true and provable.[19] To survive such a motion, "it is enough that the complaint set forth allegations of fact consistent with and appropriate to some enforceable cause of action."[20] We will affirm a superior court's dismissal "only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle [the plaintiff] to relief."[21] We note that motions to dismiss for failure to state a claim are generally disfavored and should be rarely granted.[22]

## IV.  DISCUSSION

Alaska Civil Rule 12(b)(6) permits a court to dismiss a complaint for failing to state a claim upon which relief can be granted. To establish its legal malpractice claim against Robinson, L.D.G. was required to

allege facts supporting four basic elements: (1) Robinson had a duty "to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise"; (2) he breached that duty; (3) the breach proximately caused L.D.G.'s injury; and (4) "actual loss or damage resulted from the negligence."[23]

The parties dispute whether L.D.G. asserted facts to support the second element. But L.D.G. alleged that Robinson's failure to add Freeman as a party to the lawsuit fell below the standard of care for an attorney practicing in Alaska. It was error for the superior court to conclude that this assertion, which implicates both the contours of Robinson's duty of care and the element of breach, was legally insufficient to entitle L.D.G. to relief.

We agree that the specific question facing Robinson—whether L.D.G. could make Freeman a party for allocation of fault—was unsettled[24] when he represented L.D.G. in the superior court. At that time, AS 04.21.020(a), governing liability in dram shop actions, provided in relevant part:

> A person who provides alcoholic beverages to another person may not be held civilly liable for injuries resulting from the intoxication of that person unless the person who provides the alcoholic beverages holds a license ... and (1) the alcoholic beverages are provided to a person under the age of 21 years ... or (2) the alcoholic beverages are provided to a drunken person....[25]

Also at that time, our only decision analyzing fault allocation in relation to AS 04.21.020(a)

---

**18.** *Larson v. State*, 254 P.3d 1073, 1076 (Alaska 2011) (quoting *Pepper v. Routh Crabtree, APC*, 219 P.3d 1017, 1020 (Alaska 2009)).

**19.** *Id.* (quoting *Pepper*, 219 P.3d at 1020).

**20.** *Caudle v. Mendel*, 994 P.2d 372, 374 (Alaska 1999) (quoting *Kollodge v. State*, 757 P.2d 1024, 1025–26 (Alaska 1988)).

**21.** *Larson*, 254 P.3d at 1076–77 (quoting *Pepper*, 219 P.3d at 1020) (alteration in original).

**22.** *Vanek v. State, Bd. of Fisheries*, 193 P.3d 283, 286 (Alaska 2008) (citing *Kollodge*, 757 P.2d at 1026).

**23.** *See Stewart v. Elliott*, 239 P.3d 1236, 1240 (Alaska 2010) (quoting *Shaw v. State, Dep't of Admin., Pub. Defender Agency*, 816 P.2d 1358, 1361 n. 5 (Alaska 1991)).

**24.** "Unsettled" is defined as "not decided or determined ... characterized by uncertainty, irregularity, or instability." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2510 (2002).

**25.** Former AS 04.21.020(a)(1)-(2) (2000).

was *Loeb v. Rasmussen.*[26]

In *Loeb* a store negligently sold liquor to a minor, leading to an automobile accident; one year later the minor committed suicide.[27] The personal representative of the minor's estate brought an action against the store.[28] That suit prompted us to consider the relationship between Alaska's then-recent adoption of comparative negligence[29] and the dram shop act.[30] We rejected the store's argument that our common law adoption and then the legislature's statutory adoption of comparative negligence undermined the rationale for the rule that a violator of an "exceptional statute"—a statute designed to protect a special class—may not plead a protected plaintiff's contributory fault.[31] We explained that the system of comparative negligence was "not at all inconsistent with our past decisions" because "the plaintiff/consumer's contributory fault is not *chargeable to the claimant* in these circumstances, in an action against the violator."[32] While recognizing that there was "a considerable split of authority in this area of the law," we held that the legislature's adoption of comparative negligence did not change the established rule because this "best comport[ed] with existing Alaska law and sound public policy."[33]

In reaching our conclusion, we focused on the public policy concerns underlying the dram shop act and the statutes requiring licensees to verify a purchaser's age:

> The legislature has passed many laws designed to protect minors from the pernicious effects of alcohol. Such laws, particularly those making it unlawful to sell liquor to a minor, reflect society's belief that children are not competent to assess in any meaningful way the risks involved in the use of alcohol. [The store] was able to exploit this lack of competence[ ] when it sold liquor unlawfully to [the minor]. However, we can think of no legitimate reason to allow [the store] to exploit it further[ ] by having its liability to the plaintiff reduced because [the minor] failed to exercise the same degree of care for her own safety reasonably expected of one more able to assess the risks[ ] when she purchased and used the defendant's product. [The store's] argument is particularly unpersuasive in light of the fact that it could have avoided all liability merely by securing, in good faith, proof that [the minor] was of lawful age before selling her liquor.[34]

We ultimately held that "a licensee who violates AS 04.21.050[35] is not entitled to assert the comparative fault of the minor/consumer[ ] in an action for damages resulting from the unlawful sale of intoxicating liquor."[36]

Importantly, we footnoted our holding with an express caveat:

> Because this case does not involve multiple defendants, we need not decide how the recent Tort Reform Act [amended by initiative to provide pure several liability[37]]

---

26. 822 P.2d 914 (Alaska 1991).

27. *Id.* at 916.

28. *Id.*

29. *See Kaatz v. State,* 540 P.2d 1037, 1049 (Alaska 1975) (adopting common law comparative negligence); *see also* AS 09.17.060; ch. 139, § 1, SLA 1986 ("[C]ontributory fault chargeable to the claimant diminishes proportionally the amount awarded as compensatory damages for the injury attributable to the claimant's contributory fault, but does not bar recovery.").

30. *Loeb,* 822 P.2d at 918.

31. *Id.*

32. *Id.* (emphasis in original).

33. *Id.* at 919.

34. *Id.* (citations and emphasis omitted).

35. AS 04.21.050 requires proof of age whenever the licensee or employee "questions or has reason to question whether [a person] has attained the age of 21 years," and can be the basis of liability under the dram shop statute, AS 04.21.020.

36. *Loeb,* 822 P.2d at 919–20.

37. In 1986 the legislature passed the Tort Reform Act, codifying a system of pure comparative negligence but retaining joint and several liability. Ch. 139, §§ 1–11, SLA 1986. A ballot initiative passed two years later replaced joint and several liability with pure several liability. *See generally Sowinski v. Walker,* 198 P.3d 1134, 1149–50 (Alaska 2008); *Smith v. Ingersoll–Rand Co.,* 14 P.3d 990, 994 (Alaska 2000).

affects this issue. Multiple defendants might complicate a case when an injured third party brings action against both the minor and the liquor licensee, or when more than one liquor licensee has unlawfully provided the minor with liquor. We reserve for future consideration *all issues related to multiple defendants*.[38]

Robinson argues that *Loeb* was the governing law at the time he represented L.D.G. But *Loeb* did not clearly establish the law applicable to Robinson's representation for two reasons. First, in *Loeb* we reasoned that the public policy of protecting minors prevented the licensee from asserting the minor's fault.[39] While we mentioned a similar policy of protecting obviously intoxicated persons,[40] our holding directly pertained only to minors.[41] We held that "a licensee who violates AS 04.21.050"—the statute requiring licensees to verify purchasers' age—"is not entitled to assert the comparative fault of the minor/consumer."[42] Second, in *Loeb* we analyzed the application of a comparative negligence system retaining joint and several liability.[43] But when Robinson represented L.D.G. the law applied pure several liability, raising issues which, in the footnote quoted above, we expressly reserved for future consideration.[44]

Robinson argues that in this footnote we referred only to cases where a plaintiff, not the defendant-licensee, might assert a claim against the consumer, rather than where the defendant-licensee might bring a third-party action against the consumer or join the consumer as a defendant for fault allocation.

Although we initially referenced an "action against both the minor and the liquor licensee" rather than making a more general statement (so as to include those times when the defendant adds the consumer), we noted that we "reserve[d] for future consideration *all issues* related to multiple defendants." [45] In this way, we stated that *Loeb* was not necessarily applicable in future suits involving multiple defendants under the new statutory several liability framework, regardless of who added the additional defendant(s). Thus at the time of Robinson's representation we had left unsettled the issue of whether the defendant-licensee could bring in a minor or intoxicated person for fault allocation purposes.

We therefore must consider an attorney's duty when the law is unsettled on a material issue necessitating a strategic decision by the attorney or the client. We addressed a similar situation in *Doe v. Hughes, Thorsness, Gantz, Powell & Brundin.*[46] There, a husband and wife hired a law firm to arrange their adoption of their biological child birthed by a surrogate mother.[47] Because the husband was part Chickasaw Indian, the firm became concerned about the impact of the Indian Child Welfare Act (ICWA) on the adoption—specifically, ICWA required that the adoptive parents obtain the surrogate mother's consent.[48] The firm obtained the surrogate's consent, but failed to take additional steps required to make the consent valid under ICWA because the firm was unsure whether ICWA actually applied to the case.[49] The firm instead recommended that

38. *Loeb*, 822 P.2d at 920 n. 15 (emphasis added) (citations omitted). Years after the trial in the present case, we held in *Sowinski v. Walker* that the legislature's adoption of pure several liability in AS 09.17.080 superseded our determination in *Loeb* that the violator of AS 04.21.020 could not reduce its liability by the fault of the minor-plaintiff. *Sowinski*, 198 P.3d at 1155–56 (Alaska 2008).

39. *Loeb*, 822 P.2d at 918–19.

40. *See id.* at 918.

41. *Id.* at 919.

42. *Id.*

43. *See id.* at 918, 920 n. 15.

44. *Id.*

45. *Id.* (emphasis added).

46. 838 P.2d 804 (Alaska 1992).

47. *Id.* at 805.

48. *Id.* (citing 25 U.S.C. § 1913(a)).

49. *Id.* Under ICWA, where a parent gives consent to the termination of his or her parental rights, the consent is valid only if it is "executed in writing and recorded before a judge of a court of competent jurisdiction," and is "accompanied by the presiding judge's certificate that the terms and consequences of the consent were fully explained in detail and were fully understood by the parent." 25 U.S.C. § 1913(a).

the Does allow the superior court to determine whether ICWA applied, and "was content to rest on its oars when the court concluded that it did not."[50] The superior court accepted the surrogate's consent to the adoption in the form presented and entered a final decree of adoption terminating the parental relationship between the child and the surrogate.[51]

The surrogate later moved to vacate the decree on the ground that her consent was invalid because it was not obtained in conformity with ICWA.[52] The adoptive parents obtained new representation and successfully defended the adoption, but incurred significant costs.[53] The adoptive parents sued the original firm for malpractice, alleging the firm was negligent in failing to comply with ICWA.[54] The superior court dismissed the action on summary judgment, finding that the firm's conduct was not actionable under the circumstances:

> the issue in the case was whether [the firm] was liable to the [adoptive parents] for a mere error of judgment, or for a mistake in a point of law which, at the time of the advice given, had not been settled by the Alaska Supreme Court, and was a point of law upon which reasonable lawyers could differ.[55]

We reversed, noting that because the adoption was potentially subject to ICWA's consent requirements, "the risk in failing to obtain the biological mother's consent to the adoption in conformity with the Act should have been clear to any attorney possessed of the required level of professional competence."[56] We recognized that the firm chose not to pursue validating the consent because of the added cost to the adoptive parents, and that the firm had informed the parents

that if ICWA applied it would be necessary to comply to prevent a future challenge.[57] The firm "did not, however, advise its clients to secure the natural mother's consent in conformity with the Act, despite the added cost."[58]

We explained that an attorney's obligations involve the "duty to advise the client of action the client should take in a given set of circumstances."[59] Because the firm failed to advise the parents to pursue the "only one prudent course of action"—obtaining the surrogate's valid consent—we concluded the firm had "failed in its duty to use the skill, prudence, and diligence required of an attorney practicing within this jurisdiction," breached the duty of care, and had therefore committed professional malpractice as a matter of law.[60]

We specifically addressed the superior court's conclusion that the firm could not be liable for "only an 'error in judgment' concerning a matter about which the law remained unsettled."[61] We were "not impressed" with that position, noting that:

> [a]ny uncertainty there might have been about the applicability of [ICWA] made [the firm's] failure to obtain compliance with the Act *more, rather than less, blameworthy.* The cost of compliance with the [A]ct would be by all measures slight when compared to the potential cost of not complying with the Act. The decision to ignore the additional steps required for a "valid" consent was anything but the act of a reasonably prudent lawyer.[62]

In this way, we refused to grant immunity to lawyers committing an error in judgment with regard to unsettled law.

Robinson argues that *Doe* is distinguishable because "[t]he *Doe* attorneys failed to

---

50. *Doe,* 838 P.2d at 805.

51. *Id.*

52. *Id.*

53. *Id.* at 805–06.

54. *Id.* at 806.

55. *Id.* (internal alteration marks omitted).

56. *Id.* at 806–07.

57. *Id.* at 807.

58. *Id.* (emphasis omitted).

59. *Id.* (emphasis omitted).

60. *Id.* (emphasis omitted).

61. *Id.* at 807 n. 7.

62. *Id.* (emphasis in original).

act in conformity with a governing federal statute[, whereas here] Robinson's conduct was consistent with existing law." But *Doe* demonstrates that where the law is unsettled—as it was here—there is at least a viable claim that the standard of care requires the attorney to advise a client to follow the reasonably prudent course of action in light of the uncertainty,[63] such that Rule 12(b)(6) dismissal is inappropriate.[64]

This standard of care was exemplified by the defense counsel and superior court in *H & J Corp. v. Murfitt.*[65] In *Murfitt* a drunk driver to whom a bar had negligently served alcohol caused a car accident, and the victims brought an action against the bar under the dram shop act.[66] Although the victims did not add the driver as a defendant in the suit, the bar sought to add the driver for fault allocation by filing a third-party complaint against him.[67] The victims moved to dismiss the driver to prevent the bar from apportioning fault to the driver, and the superior court granted the motion.[68] Despite that ruling, the superior court instructed the parties to present their allocation evidence to the jury.[69] The court explained that while it agreed with the victims, it was important to preserve a complete record and avoid retrial in case we concluded on appeal that the order was in error.[70]

The bar appealed the court's determination that the dram shop act precluded alcohol sellers from apportioning fault.[71] While the case was pending, we decided *Sowinski v. Walker,* holding that the legislature's adoption of pure several liability in AS 09.17.080 required a liquor licensee be liable only for its own negligence as allocated to it by the jury.[72] We issued a memorandum opinion and judgment in *Murfitt* reversing the superior court's order and providing the bar was liable only for damages corresponding to its percentage of fault as allocated by the finder of fact.[73] *Murfitt* demonstrates that because of uncertainty in the law, a prudent defense lawyer would have considered attempting to add Freeman as a defendant for fault allocation. We therefore reject Robinson's contention that as a matter of law his conduct could not amount to legal malpractice.

## V. CONCLUSION

For the reasons stated, we REVERSE the dismissal order and REMAND for proceedings consistent with this decision.

**63.** *See Doe,* 838 P.2d at 807 n. 7.

**64.** *Cf. Tush v. Pharr,* 68 P.3d 1239, 1246–47 (Alaska 2003) (providing in attorney malpractice suit that where reasonable minds could differ as to attorney's standard of care, summary judgment is not appropriate); *Linck v. Barokas & Martin,* 667 P.2d 171, 173–74 (Alaska 1983) (reversing a Rule 12(b)(6) dismissal where plaintiff alleged attorney failed to advise plaintiff of her right to disclaim an interest in her husband's estate to avoid tax liability for gifts to her children).

**65.** Mem. Op. & J. No. 1351, 2009 WL 3681660 (Alaska, Nov. 4, 2009).

**66.** *Id.* at *1.

**67.** *Id.* at *2.

**68.** *Id.*

**69.** *Id.*

**70.** *Id.*

**71.** *Id.* at *3.

**72.** 198 P.3d 1134, 1151–56 (Alaska 2008).

**73.** *Murfitt,* 2009 WL 3681660, at *5.